UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD BURLEY #502426,

                    Plaintiff,        Civil Action No. 16-cv-12256
                                       Honorable Arthur J. Tarnow
    v.                       Magistrate Judge David R. Grand

BADAWI ABDELLATIF, ERIN
PARR-MIRZA, HEATHER COOPER,
CORIZON HEALTH, INC., KIM
FARRIS, and JOANNE SHELDON,

                    Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT MOTIONS FOR SUMMARY JUDGMENT FILED BY DEFENDANTS COOPER, PARR-MIRZA, AND SHELDON [29, 45]

## I.    RECOMMENDATION

*Pro se* Plaintiff Edward Burley ("Burley"), an incarcerated person, brings this action pursuant to 42 U.S.C. § 1983, against Defendants Badawi Abdellatif ("Abdellatif"), Erin Parr-Mirza ("Parr-Mirza"), Heather Cooper ("Cooper"), Corizon Health, Inc. ("Corizon"), Kim Farris ("Farris"), and Joanne Sheldon ("Sheldon"), alleging violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution.  Before the Court for a Report and Recommendation is a Motion for Summary Judgment filed by Defendant Cooper (Doc. #29) and a separate Motion for Summary Judgment filed

by Defendants Parr-Mirza and Sheldon.  (Doc. #45).  The motions have been fully briefed (Docs. #35, #39, #42, #50, #52, #54).  Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* E.D. Mich. L.R. 7.1(f).  Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.  For the reasons discussed below, the Court recommends that the summary judgment motions filed by Cooper, Parr-Mirza and Sheldon (hereinafter, "Defendants") be GRANTED.

## II.    REPORT

### A.    Background

At all times relevant to this action, Burley was an inmate at the Macomb Correctional Facility ("MRF"), a prison operated by the Michigan Department of Corrections ("MDOC").   This action centers around Burley's assertion that Defendant Dr. Badawi Abdellatif refused to provide Burley with medical treatment because Burley is Jewish.  (Doc. #1 at 5).  In an affidavit attached to his complaint, Burley alleges that he had a "call-out" to see Abdellatif on June 23, 2015, but that:

> after [Abdellatif] found I was Jewish, [] [he] refuse[d] to treat me for chronic care, foot pains, and acid reflex [sic] problems on the same day…On the same date, Abdellatif cancelled most of my special accommodations [e.g., bottom bunk] without examining me.  He did not conduct any type of physical examination as he

indicated in his medical reports.  I was in his office for a very short period of time on 6/23/15.[1]

(Doc. #1 at 22).

Burley alleges that he "wrote kite letters to [Defendant] RN Parr[-Mirza] and [Defendant] HUM Cooper relating to this incident" with Abdellatif.  (*Id.* at 22). Burley then filed two grievances against Abdellatif: one on June 29, 2015 (Grievance MRF 15060117412d4) ("Grievance 15-06"); and one on June 30, 2015 (Grievance MRF 150701204012I) ("Grievance 15-07") (collectively, the "Grievances").  (Docs. #1 at 12, 15; #29-3 at 21, 27).  Each grievance asked Burley to "State problem clearly," and in each one, he alleged wrongful conduct *solely* against Abdellatif, as follows:

| <u>Grievance 15-06</u> | <u>Grievance 15-07</u> |
|---|---|
| "I grieve Dr. Abdellatif for denying me medical treatment for my heel spurs and acid reflux on 6/23/15 when he stated he could not treat me because I am Jewish. I complain his lack of treatment and religious discrimination has caused me to suffer unnecessary pain and suffering, as well as mental anguish.  He was deliberately indifferent towards my serious medical need[s]…Policy has been violated by the doctor … I ask for immediate medical attention by another doctor for my heel spurs and digestive problems.  And that Dr. Abdellatif be | "Medical Detail and Special Accommodation has been violated by [] Abellatif on 6/23/15 when he cancelled my bottom bunk, bottom floor, and other valid medical details I had without examining me as policy mandates…I was refused treatment on 6/23/15 by Abdellatif for religious purposes.  I submit Abdellatif cancelled my details out of retaliation.  My First and Eighth Amendment constitutional rights have been violated." |

---

[1] Burley clarifies that by "a very short period of time," he means "less than 5 minutes in duration."  (*Id.* at 22).

| investigated for medical malfeasance, and malice." | |

(*Id.*).

The grievance process for both Grievances 15-06 and 15-07 then progressed

through the MDOC's three-step grievance process described below.

### Grievance 15-06

Defendant Parr-Mirza reviewed Grievance 15-06.  (Doc. #29-3 at 22).  Parr-

Mirza indicates in her grievance response that she reviewed Burley's health

records, and interviewed Burley, Abdellatif, and Officer Tregumbo and Sergeant

Butts (both of whom Burley identified to Parr-Mirza as being able to corroborate

his assertion as to the length of time he met with Abdellatif).  (*Id.*).  Parr-Mirza

reported the following regarding her investigation:

> Abdellatif documented that an exam was completed on
> [Burley's] feet and he told [Burley] to purchase OTC meds and
> that [Burley] walked out of his office fine when he claimed
> unbearable tenderness in heel upon palpation.  Per Dr.
> Abdellatif's plan comments were as follows: [Burley] came into
> his office limping and when examination was done and when told
> to buy OTC medications he left walking fine and saying you [sic]
> not a real doctor and you have hundred[s] of lawsuits against
> you.   Dr. Abdellatif discontinued soak tub [accommodation]
> because he documented per [Burley] it didn't help at all.  Dr.
> Abdellatif also discontinued special accommodation for bottom
> bunk detail stating [Burley] does 1000 pushups a day –same for
> situps, plays basketball and that there was no need for the special
> accommodation order. . . . Abdellatif [] stated he definitely did an
> exam because [Burley] was jumping and grimacing when he
> palpated his feet. . . . Per Officer Tregumbo he stated he was
> unsure of how long [Burley] was in the exam room and only that

it was not a long duration.[2]  [Burley] was seen by the Physician
Assistant (PA) on 7/6/2015 and give[n] a temporary order for
Tylenol and [Burley] was informed he has to purchase refill from
the store.  The PA did not renew bottom bunk detail or [tub
accommodation].  On 7/20/15 [Burley saw] Dr. Abdellatif again
and an XRAY was ordered and completed on 7/29/2015.  Results
of XRAY was a diagnosis of "normal feet".

(*Id.*).  Parr-Mirza signed this response, as did "reviewer," Defendant Cooper.  (*Id.*
at 23).

Burley filed a Step II appeal, asserting (despite the fact that Parr-Mirza had
interviewed the corroborating witnesses identified by Burley):

A thorough investigation was not conducted…I have requested
the camera reviews as there are three (3) cameras capturing Dr.
Abdellatif's Office, none of which have been reviewed by [Parr-
Mirza].  I informed HUM Cooper and [Parr-Mirza] that I was in
Abdellatif's office for only a brief period of time and requested
that the cameras be viewed according to policy.  This was not
done as it would have demonstrated that I was in his office for a
very short period of time as confirmed by [] Officer Tregumbo.  I
did not tell Abdellatif that I done 100 push ups and sit ups – this
is a total lie to justify his cancellation of my bottom bunk detail
out of retaliation.  He did all the cancellations without conducting
any type of examination in violation of [the applicable policy].

(Doc. #29-3 at 19).

RN Laura Kinder reviewed Burley's Step II appeal.  (*Id.* at 19-20).
Kinder indicated that she reviewed Burley's medical records, including the

---

[2] Later in her response, Parr-Mirza wrote that Sergeant Butts "stated he did not see
Dr. Abdellatif follow you out of his office as you had stated at the grievance
interview.  Sergeant Butts also could not recall the total amount of time you were
in Dr. Abdellatif's office."  (*Id.*).

one from his June 23, 2015 visit with Abdellatif.  (*Id.* at 20).  She also appears to have reviewed the Step I evidence gathered by Parr-Mirza, noting in conclusion that "Burley had since been seen by another medical provider, "without a change in the current plan of care."  (*Id.*).  Based on the foregoing, Kinder determined that Burley had raised a "disagreement with the medical judgment of [Abdellatif]," which "does not support a claim that the treatment plan is inappropriate."  (*Id.*).  She further found "insufficient evidence to substantiate the allegations of staff religious discrimination."  (*Id.*).

Burley then filed a Step III appeal, again alleging that his allegations against Abdellatif had not been thoroughly investigated, that "video was available and substantiates the fact that there was not enough time for Abdellatif to examine [him]," and that "[p]rison personnel has attempted to cover up for Abdellatif by their lack of investigation for objective evidence." (*Id.* at 19).  Burley concluded by asserting that "Abdellatif has violated policy and prisoner's right to request and receive medical treatment.  Dr. has lied and fabricated medical records …"  (*Id.*).

RN R. Harbaugh reviewed and rejected Burley's Step III appeal.  (*Id.* at 18).  She determined that "[a]ll relevant information within the electronic medical record has been reviewed," and that the grievance was "appropriately addressed" at Steps I and II.  (*Id.*).  Harbaugh wrote that Abdellatif "is the

6

medical authority and is responsible to manage the treatment plan of the patient.  A disagreement with the judgment of someone qualified and capable of making same does not support a claim for denial of care.  [Burley's] allegations for denial of care due to religion is not supported." (*Id.*).

### *Grievance 15-07*

Parr-Mirza also reviewed Grievance 15-07, and her reasons for denying it were virtually identical to the ones she gave for denying Grievance 15-06.  (*Id.* at 28).  Burley's Step II appeal was verbatim of his Step II appeal in Grievance 15-06.  (*Id.* at 25).  Kinder reviewed Burley's Step II appeal, and issued a denial similar to the one she issued with respect to Grievance 15-06.  (*Id.* at 26).  Kinder concluded, "[t]he issue presented in this grievance has been reviewed by health care staff.  [Burley] was evaluated by [Abdellatif] and the medical details and [accommodations] were reviewed and updated at that appointment and it was determined that they were not medically indicated at that time." (*Id.*).  She further wrote that "[Abdellatif] is the medical authority and [Burley's] disagreement with the medical judgment of [Abdellatif] does not support a claim that the treatment plan is inappropriate.  Based on the information provided by [Burley] there is insufficient evidence to substantiate allegations of staff misconduct." (*Id.*).

Burley's Step III appeal in Grievance 15-07 was mostly verbatim of his Step III appeal in Grievance 15-06, the only difference being his additional allegation

that a "total denial of medical treatment has been established by [Burley's] statement and [Abdellatif's] failure to address." (*Id.* at 25). Harbaugh reviewed Burley's Step III appeal, determining that his complaint that "[Abdellatif] discontinued his medical details and special accommodations without an examination on June 23, 2015" was "appropriately addressed" at Steps I and II. Harbaugh clarified that "Past approval [of accommodations], whether during previous or current incarceration, does not guarantee indefinite provision or future renewal of an accommodation or detail.  Special accommodations and medical details are updated periodically by the facility Medical Provider based on the patients [sic] current medical needs.  No violation has been established." (*Id.*).

On June 17, 2016, Burley filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his First, Eighth, and Fourteenth Amendment rights against all of the above named Defendants.  As to Parr-Mirza, Burley alleges that she was "personally involved in all aspects of this case.  I had occasion to speak with [her] and bring to her attention that I was denied medical attention by Abdellatif, however, she would not assure I received care." (Doc. #1 at 5, ¶ 1). Burley notes that Parr-Mirza reviewed his grievance against Abdellatif.  (*Id.*). Burley makes very similar allegations against Defendant Cooper, asserting that she, "was, as well, involved in all aspects of the incident as I also sent her a copy of the kite request for medical care.  Her and I spoke about the incident and she

assured me I would receive care.  She is the Health Unit Manager (HUM), and is to assure I … receive care."  (*Id.*, ¶ 2).  Later in his complaint, Burley also makes separate verbatim allegations against Cooper and Parr-Mirza, alleging that each "spoke with nurses and other health care officials and informed them not to give me accommodations for my asthma and other breathing complications, inter alia health needs, and did further conspire to deny me a medically necessary Hearing Aid for a period of time."  (*Id.*, ¶¶ 8, 9).

The allegations in Burley's complaint against Defendant Sheldon are different, and include only the following:

> Joanne Sheldon was personally involved in all aspects of the denial of care as I brought it to her attention that Abdellatif had denied me medical care and requested intervention.  [Sheldon] is an administrator of Bureau of Health Care Services for the MDOC.  She too was personally involved in all aspects of denial of care.

(*Id.*, ¶ 5).

The summary judgment motions filed by Defendants Cooper, Parr-Mirza, and Sheldon raise essentially the same arguments, including that Burley did not properly exhaust his claims against them.[3]

---

[3] The Defendants also make a handful of other arguments as to why they are entitled to summary judgment on Burley's claims.  However, because the Court finds that it can resolve the motions based on the parties' exhaustion arguments, it will not address these additional arguments.

**B.     Standard of Review**

Although Defendants have captioned their motions as ones for "summary judgment," their argument that Burley failed to properly exhaust his claims against them is more properly evaluated under the standards applicable to a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6).   The issue was summarized concisely in Magistrate Judge Whalen's Report and Recommendation in *Twohig v. Riley*, No. 12-11832, 2013 WL 3773365 (E.D. Mich. July 17, 2013):

> There has been a divergence of viewpoints as to the correct procedural basis for a dismissal premised on non-exhaustion. In *Jones v. Bock*, 127 S.Ct. at 921, the Supreme Court suggested in dicta that failure to exhaust might be a basis for dismissal under Rule 12(b)(6).   However, in *Pointer v. Wilkinson*, 502 F.3d 369 (6th Cir. 2007), the Sixth Circuit found that a dismissal based on exhaustion may be distinct from a dismissal for failure to state a claim upon which relief may be granted.   *See also Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999) (concluding that failure to state a claim as used in § 1997e(c) and § 1915(g) does not include failure to exhaust administrative remedies).   In *Melton v. Michigan Corrections Commission*, 2009 U.S. Dist. LEXIS 21319, 2009 WL 722688 (E.D. Mich. 2009), the Court granted a motion for summary judgment, dismissing the complaint without prejudice for failure to exhaust . . . .
>
> In the context of the PLRA, a plaintiff's failure to exhaust administrative remedies does not seem to fit within Fed.R.Civ.P. 12(b)(6).   After *Jones v. Bock*, failure to exhaust is not a pleading requirement, so there is no determination of whether a plaintiff has stated a claim on the face of the complaint.   And unlike the typical 12(b)(6) motion, dismissal is

> without prejudice.  Rule 12(b)(1) (subject matter jurisdiction) clearly does not apply, since "the PLRA exhaustion requirement is not jurisdictional." *Woodford v. Ngo*, 548 U.S. 81, 101, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  Summary judgment seems inapposite since there is no determination of the merits of the case, and "judgment" is not entered.  *See Studio Electrical Technicians Local 728 v. International Photographers of Motion Picture Industries, Local 659*, 598 F.2d 551, 552 (9th Cir. 1979) ("Summary judgment is on the merits," and failure to exhaust, as a matter in abatement, "ordinarily" does "not deal with the merits.") . . . .

*Id.* at *3.  Citing the decisions of other circuit courts for support, Magistrate Judge Whalen concluded that the best approach is to treat a motion to dismiss based on failure to exhaust as an unenumerated Rule 12(b) motion.  *Id.* at *4.  Since *Twohig*, other judges in this district have also found this appropriate.  *See Boulding v. Mich. Dept. of Corr.*, No. 13-14325, 2015 WL 136195 (E.D. Mich. Jan. 5, 2015); *Stevens v. Potila*, No. 14-10863, 2015 WL 1245889 (E.D. Mich. Mar. 18, 2015); *Weathington v. Cnty. of Wayne*, No. 12-13573, 2015 WL 3771460, at *1, 3-4 (E.D. Mich. May 22, 2015); *Threet v. Phillips*, No. 14-13345, 2016 WL 374121, at *2-3 (E.D. Mich. Feb. 1, 2016); *Ward-El v. Luckey*, No. 15-10238, 2016 WL 1253540, at *1-2 (E.D. Mich. Mar. 10, 2016); *Price v. Jordan*, No. 14-10194, 2016 WL 5109534, at *2 (E.D. Mich. Aug. 8, 2016).  The Court agrees with the foregoing approach, and will therefore consider Defendants' exhaustion argument under as if it were made in an unenumerated Rule 12(b) motion.

### Motion to Dismiss for Failure to State a Claim

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint[4] as true.  *Id.*; *see also Erickson*

---

[4] A reviewing court's consideration of a motion to dismiss under Rule 12(b)(6) is ordinarily confined to the pleadings.  *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).  Thus, assessment of the complaint's facial sufficiency

*v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements.  *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers.  *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).  Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed."  *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

---

ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  However, in addition to the complaint's allegations, the Court may also consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  All of the materials cited herein satisfy these standards.

## C.   Analysis

### 1.   *Burley Failed to Properly Exhaust His Claims against Defendants Cooper, Parr-Mirza, and Sheldon*

#### a. *Prison Litigation Reform Act*

The Defendants argue dismissal is appropriate because Burley failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Under the PLRA, a prisoner may not bring a civil action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted.  42 U.S.C. §1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  This "exhaustion" requirement serves two main purposes:  (1) it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and (2) it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89.  The Supreme Court has held that this "exhaustion requirement requires proper exhaustion."  *Id.* at 93.  Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90.  Failure to exhaust is an affirmative defense that must be raised by a defendant and on which the defendant bears the burden of proof.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### b.  MDOC's Grievance Policy

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself."  *Jones*, 549 U.S. at 200.  In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy").  (Doc. #29-2).  A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct.  (*Id.* at ¶ B).  The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance.  (*Id.* at ¶¶ P, V).  Importantly to the parties arguments in this case, the Policy provides that the grievance must include the "[d]ates, times, places, **and names of all those involved in the issue being grieved**."  (*Id.* at ¶ R) (emphasis added).

If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal.  (*Id.* at ¶ BB).  To file a Step II grievance, the prisoner must request an appeal form from the Step I Grievance Coordinator, and then send the completed appeal form to the Step II Grievance Coordinator designated for the field or office being grieved either within ten business days after receipt of the Step I response or, if no timely response is received, within ten business days of the date

the response was due.  (*Id.*).  If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III.  (*Id.* at ¶ FF).  Again, an inmate may only pursue a claim in federal court if he has complied with his obligations at each of these three steps.  (*Id.* at ¶ B).

### c. *Burley Failed to Exhaust the Claims Asserted in His Complaint against Cooper, Parr-Mirza, and Sheldon, and the Waiver Exception He Relies on Does Not Apply*

Defendants Cooper, Parr-Mirza, and Sheldon argue that Burley failed to exhaust his claims against them because his Grievances were not directed at them, and did not name them "despite the requirement [in Paragraph R of the Policy] that the names of all those involved in the issue being grieved [must] be included." (Docs. #29 at 16, #45 at 15-16).  Defendants' "analysis" relies principally on *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003), and *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010), but neither case helps them.

Defendants cite *Burton* for its holding that "if the first allegation of mistreatment or misconduct on the part of [an] official is made at Step II or Step III of the grievance process," the inmate has not properly exhausted his claim against that official.  (Doc. #29 at 16) (quoting *Burton*, 321 F.3d at 574).  But *Burton* was abrogated by the United States Supreme Court's holding in *Jones*, 549 U.S. at 219, that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."

16

As to *Reed-Bey*, 603 F.3d at 324, although the Sixth Circuit wrote in that case that "[u]nder the Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance," that sentence merely quoted Paragraph R of the Policy.  In reality, *Reed-Bey* is of no substantive assistance to Defendants. Reed-Bey was an MDOC inmate who had suffered a shoulder injury that required surgery.  *Reed-Bey*, 603 F.3d at 323.  He believed he was not receiving adequate follow-up care and filed a grievance about that issue.  However, contrary to Paragraph R of the Policy, he "fail[ed] to name a single individual" in his initial grievance.  *Id.* at 323–24.  Nevertheless, the grievance proceeded through the three-step process, and when that still did not resolve Reed-Bey's concerns, he filed a federal lawsuit against numerous defendants.  Those defendants then argued that Reed-Bey's failure to name them in his grievance meant that he had not properly exhausted his claims against them.  *Id.*

The Sixth Circuit disagreed with the defendants, finding that the "failure to exhaust" defense had been waived by allowing the *procedurally infirm* grievance to be considered on its merits: "Officials at the Department of Corrections, for reasons of their own, overlooked (or perhaps forgave) this procedural failing and chose to address Reed-Bey's grievance on the merits....When prison officials decline to enforce their own procedural requirements and opt to consider

17

otherwise-defaulted claims on the merits, so as a general rule will we." *Id.* at 324-25.  Clearly, *Reed-Bey* does not support Defendants' argument.

But Burley's reliance on *Reed-Bey* and related cases is also misplaced. Citing *Reed-Bey*, Burley argues that "defendant Cooper has waived any right to challenge any exhaustion issue as the MDOC did not enforce their own procedural rules."  (Doc. #35 at 12).  He also relies on *St. Ann v. McLean*, No. 5:15-cv-11770, 2016 Dist. LEXIS 137824 (E.D. Mich. Aug. 15, 2016).  In that case, the plaintiff's grievance did "not provide the identification information described in [Paragraph R of the Policy]."  *St. Ann*, 2016 Dist. LEXIS 137824, at *32.  Defendants moved to dismiss the claim that was the subject of that grievance, arguing that the plaintiff's failure to name the alleged wrongdoers "was not the MDOC's basis for rejecting the grievance at Step I or denying it at Step II."  *Id.*  The Court rejected that argument, relying principally on *Reed-Bey*:

> "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we."  [*Reed-Bey* 603 F.3d at 325].  This is so, because it "makes a difference" when "[o]fficials at the Department of Corrections, for reasons of their own, overlooked (or perhaps forgave) this procedural failing and chose to address [the] grievance on the merits[,]" since "[t]he point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court."  *Id.* at 324 (citing *Woodford*, 548 U.S. at 94-95). As the Sixth Circuit rhetorically queried, "[w]hen the State nonetheless decides to reject the claim on the merits, who are we

to second guess its decision to overlook or forgive its own procedural bar?" *Id.* at 325.

*Id.* at *32-33.

In his final sur-reply in this matter (Doc. #54 at 3), Burley argues that the recent case of *Holloway v. McLaren*, No. 15-2184, 2016 U.S. App. LEXIS 14644 (6th Cir. 2016) supports his position.  In *Holloway*, an MDOC inmate filed a grievance complaining that his cell lacked a toilet and drinking water.  In the grievance, he named only the "Deputy of Housing – Olsen."  At Step II, however, Holloway, "asserted additional allegations about his cell conditions, but did not identify any prison officials."  Holloway, 2016 U.S. App. LEXIS 14644, at *2. After the three-step grievance process was completed, Holloway filed a federal court action against three prison officers (but apparently not Olsen) alleging violations of his Eighth Amendment rights related to his cell conditions.  Those three defendants moved to dismiss Holloway's claims, arguing that he had not identified them in his grievance, and therefore did not exhaust any claims against them.

The district court agreed with the defendants, but the Sixth Circuit reversed on appeal, stating: "[a]ccording to the [Policy], at all three steps of the grievance process, a grievant must provide the facts underlying the issue being grieved and include '[d]ates, times, places, and names of all those involved.'"  *Id.* at *5.  The Sixth Circuit seems to have reasoned that by including new factual allegations

about his cell at Step II without identifying any wrongdoer, Holloway violated Paragraph R of the Policy.  Citing *Reed-Bey*, 603 F.3d at 325-26, the court then held, "[b]ecause MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit cannot provide the basis for dismissal of his complaint for lack of exhaustion."  *Id.*

*Reed-Bey*, *St. Ann* and *Holloway* are all unavailing to Burley, though of those three cases, *Holloway* is the closest to Burley's.  As discussed above, *Reed-Bey* and *St. Ann* involved *initial* grievances that were procedurally infirm.  By allowing the grievances to nonetheless move forward through the three-step process, the exhaustion defenses *related to those infirmities* were deemed waived.[5] Here, there was no procedural defect in Burley's Step I Grievances.  As detailed

---

[5] This waiver does not mean that Reed-Bey could have filed a lawsuit against any prison official he wanted, about any issue he wished to complain.  While the MDOC may have elected to ignore the grievance's failure to link any particular individual with the alleged wrongdoing, it cannot be said to have made the same choice with respect to issues the grievant did not raise.  *See Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) ("prison officials waive any procedural irregularities **in a grievance** when they nonetheless address the grievance on the merits.") (emphasis added).  To hold otherwise would run counter to the dual purposes of the PLRA's exhaustion requirement of (1) promoting efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and (2) protecting administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89.  Again, if the inmate never asserts a claim in a grievance, the MDOC never has an opportunity to consider or correct the problem.  And, had the additional claim been included in the grievance, the MDOC may well have made a different choice about overlooking the procedural irregularity.

above, *supra* at 3-4, Burley unequivocally limited his two Grievances to alleged wrongdoing by Abdellatif.[6]   The three-step process for considering those Grievances then proceeded to a final determination.   As the MDOC did not overlook any procedural error by Burley in permitting his Step I Grievances to proceed through the entire three-step process, it cannot be said that Defendants Cooper, Parr-Mirza, or Sheldon waived the PLRA's exhaustion requirement based on the handling of those Step I Grievances.  *See Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *9 (E.D. Mich. Mar. 31, 2016) (finding that where "grievance screener reviewing [] grievance would have no reason to reject it for failure to name all those involved . . . there was no apparent procedural defect in [the] grievance such that it could be fairly said that the screener 'overlooked (or perhaps forgave),' [a] procedural failing.") (quoting *Reed-Bey*, 603 F.3d at 324).

In his Step II and III appeals, however, Burley makes accusations that Parr-Mirza and Cooper[7] failed to review videos that Burley claims would prove he met with Abdellatif for only a short period of time.  Assuming *arguendo* that adding

---

[6] While Burley **now** contends that Defendants Cooper, Parr-Mirza, and Sheldon were substantively and actively involved in the actual denial of medical care, no such allegation is made in or could be inferred from his Step I Grievances.  *Id.*

[7] Burley makes no allegations in any of his grievance papers against Defendant Sheldon.  Accordingly, there can be no dispute that under any of the case law discussed herein, he did not exhaust any claims against her.  Indeed, Burley ultimately seems to "concede" [sic] that Sheldon is not a proper defendant in this action.  (Doc. #54 at 2).

such claims at the latter steps of the grievance process brings Burley's case in line with *Holloway*,[8] it still would not save the (unexhausted) constitutional claims he asserts against them in his complaint.

Burley's Step II and III allegations challenge Parr-Mirza's and Cooper's investigation of Burley's Grievances against Abdellatif.  The law is clear, however, that merely responding to a grievance in a manner unacceptable to the grievant is not actionable under Section 1983.  *See Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("'denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983.'"); *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."); *Lee*, 104 F. App'x at 493) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Diamond v. Jackson*, No. 15-P164, 2016 WL 411112, at *5 (W.D. Ky. Feb. 2, 2016) ("A plaintiff's claim is against the subjects of his or her grievances, not those who merely decided whether to grant or deny the grievances.").  Thus, if Burley exhausted any "claims" against Defendants Parr-Mirza and Cooper, it would only

---

[8] It is not even clear that this is the case because at bottom, Burley's assertions still go to the ultimate issue of whether Abdellatif violated Burley's constitutional rights.

be with respect to claims that do not state a basis for relief.  For the reasons stated above, *supra* at 20-21, any exhaustion would not extend to claims he failed to raise at any point during the grievance process.

Other cases within the Sixth Circuit are consistent with the approach discussed above.  In *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011), Hall was an inmate who filed a grievance directed at a particular prison officer who refused his request to transfer to a tobacco-free prison.  Although Hall wrote in his grievance that in addition to the requested transfer, he wished to see a doctor, he did not allege any wrongdoing by a doctor, or name one in the grievance.  After the three-step grievance process was completed, the inmate filed a federal court lawsuit.  However, in addition to naming as a defendant the prison official who had denied his transfer request, Hall named the prison's medical director as a defendant.  The district court dismissed Hall's claims against the doctor finding that by not directing any allegations in his grievance at the doctor, Hall had not exhausted any claims against him.  The Sixth Circuit affirmed, noting that Hall's "grievance [was] exclusively concerned with the need for a transfer to a tobacco-free unit."  *Id.* at *6.

In *Lewis v. Spitters*, No. 1:14-CV-917, 2015 WL 5682405, at *5 (W.D. Mich. Sept. 18, 2015), an inmate had exhausted various grievances against certain named prison officers.  But, when he filed suit, he named additional prison officers

as defendants.  The prisoner argued that his failure in this regard should be excused because he was unaware of the additional officers' names and identities when he submitted the grievances.  The court rejected that argument because, even if he was unaware of their names, he was still "obliged to indicate in his grievance that the matter was being pursued against additional individuals whose identities had not yet been ascertained."  *Id.*

Again, the point is that notwithstanding the MDOC's handling of Burley's Grievances and Step II and III appeals, he did not exhaust claims that he never raised.  The other cases on which Burley do not help him overcome this fatal flaw. For instance, he relies on *Nelson v. Choi*, No. 15-13101, 2016 WL 4168649 (E.D. Mich. Aug. 8, 2016), arguing that "[t]he Nelson court found that the regional dental director was liable, even though he had no personal involvement with the plaintiff[.]  The exact scenario exists in this case."  (Doc. #50 at 9).  But *Nelson* is inapposite because that case dealt solely with the issue of whether a prison dental director could be said to have been "personally involved" in the alleged denial of dental care to an inmate.  It had nothing whatsoever to do with whether the inmate had properly exhausted a grievance against him.

Nor does *Burton v. Kakani*, No. 09-10893, 2009 WL 3101046, at *2 (E.D. Mich. Sept. 23, 2009), help Burley.  He cited *Burton* for its ruling that although the inmate plaintiff "did not provide the Defendants' names in his grievance, [he]

substantially complied with this requirement by providing sufficient information for the prison to easily determine that the Defendants were the persons being grieved." But Burley ignores the basis for the *Burton* court's ruling; the grievance in question in that case was expressly directed to "the P.A." and "the Doctor," and the "Defendants have not alleged that any PA or doctor, other than Defendants, were assigned to the prison at the time." *Burton*, 2009 WL 3101046, at *2. Essentially, the Court found substantial compliance because Burton provided sufficient information in his grievance for the MDOC to determine the identity of the PA and doctor being grieved. Here, in contrast, there was nothing to "determine" as to the subject of the Grievances; the face of Burley's Step I Grievances made clear that they were directed solely to Abdellatif, and to the extent his Step II and III appeals went further, it was only to challenge the manner in which Cooper and Parr-Mirza handled Burley's Grievances against Abdellatif.[9]

For all of these reasons, Defendants Cooper, Parr-Mirza and Sheldon have shown that Burley did not exhaust the claims he asserts against them in his complaint in this matter. Accordingly, their motions for summary judgment (Docs. #29, #45) should be granted.

---

[9] Burley's assertion that he "did not specifically list Ms. Cooper in the initial grievance as I was not cognizant of her identity at that point in time" gets him nowhere. (Doc. #35 at 14). Again, the issue is not that Burley was not aware of Cooper's name at the time he filed his Grievances, but that he made no mention whatsoever of wrongdoing by anyone other than Abdellatif. *Lewis*, 2015 WL 5682405, at *5.

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the motions for summary judgment **(Docs. #29, #45)** filed by Defendants Cooper, Parr-Mirza, and Sheldon be **GRANTED**, and that Burley's claims against them be **DISMISSED WITHOUT PREJUDICE.**

Dated: July 18, 2017            s/David R. Grand
Ann Arbor, Michigan          DAVID R. GRAND
                             United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).

Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 18, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager