UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD BURLEY,

                              Plaintiff,          Civil Action No. 16-cv-12256
                                                  Honorable Arthur J. Tarnow
              v.                                  Magistrate Judge David R. Grand

BADAWI ABDELLATIF, ERIN
PARR-MIRZA, HEATHER COOPER,
CORIZON HEALTH, INC., KIM
FARRIS, and JOANNE SHELDON,

                              Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS [55]

*Pro se* Plaintiff Edward Burley ("Burley"), an incarcerated person, brought this action against Defendants Badawi Abdellatif ("Abdellatif"), Erin Parr-Mirza ("Parr-Mirza"), Heather Cooper ("Cooper"), Corizon Health, Inc. ("Corizon"), Kim Farris ("Farris"), and Joanne Sheldon ("Sheldon"), alleging violations of his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Defendants Cooper, Parr-Mirza, and Sheldon were subsequently granted summary judgment on August 15, 2017. (Doc. #60). Before the Court for a Report and Recommendation is a Motion to Dismiss filed by the remaining Defendants: Corizon, Abdellatif and Farris (collectively, "Defendants"). (Doc. #55). The motion has been fully briefed. (Docs. #57, #58). Generally, the Court will not hold a hearing on

a motion in a civil case in which a party is in custody.  *See* E.D. Mich. LR 7.1(f).  The facts and legal issues are adequately presented in the briefs and on the record, and the Court declines to order a hearing.

## I.  RECOMMENDATION

For the reasons discussed below, it is **RECOMMENDED** that the Motion to Dismiss **(Doc. #55)** be **GRANTED** as to Corizon and Farris, and **GRANTED IN PART AND DENIED IN PART** as to Abdellatif.  Abdellatif's motion should be **GRANTED** as to Burley's Americans with Disabilities Act, conspiracy, First Amendment free exercise, Fifth Amendment and due process claims, and **DENIED** as to his First Amendment retaliation, Eighth Amendment, equal protection, gross negligence and intentional infliction of emotional distress claims.

## II.  REPORT

### A.  Background

At all times relevant to this action, Burley was an inmate at the Macomb Correctional Facility ("MRF"), a prison operated by the Michigan Department of Corrections ("MDOC").   Burley's claims center around a June 23, 2015 chronic care visit he had with Dr. Abdellatif regarding his complaints of heel spur pain and acid reflux.  (Doc. #1 at 12-13, 22).  Burley alleges that Dr. Abdellatif took his vitals, but then, after Burley mentioned that he "was on the Vegan line and was Jewish," Abdellatif

terminated the appointment,[1] canceled various accommodations that had been previously ordered for Burley, and refused to prescribe Burley pain medicine.[2]  (*Id*. at 3, 7, 12, 22). Burley also alleges that he advised PA Farris "that Abdellatif had denied [him] medical care," and that she "assured [him] that [he] would be treated for [his] foot problems and acid reflux."  (*Id*. at 5).  However, Farris allegedly, told other nurses not to provide Burley with accommodations for his "asthma and other breathing complications," denied him "a medically necessary Hearing Aid for a period of time," and also failed to treat his injured back.  (*Id.* at 6).

After pursuing internal grievances against Abdellatif (*id.* at 12-20), Burley filed the instant suit on June 17, 2016.  Construing Burley's complaint liberally, he alleges the following claims:

> 1)    deliberate indifference to his serious medical needs in violation of the Eighth Amendment (*id*. at 3, 5, 7);
>
> 2)    retaliation in violation of the First Amendment  (*id*. at 3);
>
> 3)    violation of his First Amendment right to freedom of religion (*id*.);
>
> 4)    deprivation of property in violation of the Fifth Amendment stemming from the loss of his foot bath and "bottom floor" and "bottom

---

[1] Burley attached to his complaint a declaration signed by fellow prisoner, Richard Crowell ("Crowell"), who avers that he was "at medical" on June 23, 2015, and "personally" heard Abdellatif tell Burley "I am not able to see you because you are a Jew." (*Id*. at 22-23).

[2] It appears Abdellatif canceled a foot soaking basin and a bottom bunk/bottom floor detail.  (*Id*. at 13).

bunk" privileges (*id.* at 6);

5)    violation of his Fourteenth Amendment rights under the Equal Protection Clause in denying or preventing him from receiving medical treatment either because he is Jewish or because he is hearing impaired, or both (*id.* at 3);

6)    conspiracy between Defendants and "other medical personnel" to deny his medical care, presumably in violation of 42 U.S.C. § 1985 (*id.* at 5-6);

7)    violations of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12132 (*id.* at 3, 6);

8)    state law claims of gross negligence and intentional infliction of emotional distress ("IIED") (*id.* at 5-6).

**B.    Defendants' Motion to Dismiss**

Defendants argue that all of Burley's claims should be dismissed.  First, they argue that Burley failed to show a physical injury, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e).  Second, they argue that Burley failed to state a claim upon which relief may be granted, and therefore his claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**C.    Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content

4

he

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations as true.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "'is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements." *Hogan v. Visio Fin. Servs., Inc.*, 2015 WL 3916084, at *3 (E.D. Mich. June 25, 2015) (quoting *Iqbal*, 556 U.S. at 678); *see also Twombly*, 550 U.S. at 555.   "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When presented with a Rule 12(b)(6) motion testing the sufficiency of a complaint, the Court "may consider the Complaint and any exhibits attached thereto, public records,

items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).   Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).   Nonetheless, "[t]he leniency granted to *pro se* [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and their "complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### D.   Analysis

#### 1.   Physical Injury

Defendants argue that because Burley failed to allege "that he sustained any physical injury as a result of his alleged constitutional deprivations," his claims should be dismissed according to 42 U.S.C. § 1997e(e). (Doc. #55 at 19-20).   This argument lacks merit.   The relevant portion of the statute states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for *mental or emotional injury* suffered while in custody without a prior showing of physical injury or the commission of a sexual act.

42 U.S.C.A. § 1997e(e) (emphasis added).   Here, Burley alleges violations of his constitutional rights, and the Sixth Circuit has held that "constitutional injuries . . . are

distinct from mental and emotional injuries . . . the plain language of the statute does not bar claims for constitutional injury that do not also involve physical injury"; in this context no showing of physical injury is required.  *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 794 (2016); *see also Richardson v. Bauman*, No. 2:12-CV-435, 2015 WL 5347557, at *2 (W.D. Mich. Sept. 14, 2015).  Thus, to the extent Burley alleges distinct constitutional injuries he is not required to show physical injury.

Moreover, Burley alleges in his complaint (and attachments) that he was in "a lot of pain" relating to his asthma and various other medical conditions that had been previously diagnosed and thus were known to Abdellatif at the time, and that he was forced to endure "excruciating pain and suffering for a protracted period of time" due to Defendants' alleged failure to provide him with medical treatment.  (Doc. #1 at 6, 22).  Defendants point the Court to cases holding that "while the requisite physical injury need not be significant, it must be more than *de minimis*" (Doc. #55 at 19) (citing *Jarriett v. Wilson*, 414 F.3d 634, 640 (6th Cir. 2005)), but they do not even mention Burley's allegations of pain, much less analyze whether they are sufficient to state a claim for relief at the 12(b)(6) stage.  Accordingly, taking Burley's allegations as true, dismissal on this basis is not appropriate at this early stage of the proceedings.

## 2.    **Constitutional Claims Against Corizon**

In order to demonstrate liability under §1983, a plaintiff must first establish that each named defendant acted under color of state law and that her actions violated rights

7

secured by the Constitution and/or laws of the United States.  *See Baker v. McCollan*, 443 U.S. 137 (1989).   The plaintiff also must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Moreover, § 1983 liability cannot be premised upon mere allegations of *respondeat superior*, *i.e.*, supervisory liability; rather, a defendant can only be liable under § 1983 if the plaintiff shows that she personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bellamy*, 729 F.2d at 421.   In other words, liability under § 1983 must be based upon active unconstitutional behavior, not a "mere failure to act."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

A municipality may not be held vicariously liable under § 1983 for the actions of its employees.  *See Connick v. Thompson*, 563 U.S. 51, 60-61 (2011); *Monell*, 436 U.S. at 694.   Rather, a municipality is liable only when its official policy or custom directly causes the plaintiff's injury.  *Id.*  Accordingly, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694).  *See also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (noting that under *Monell*, a plaintiff asserting a § 1983 claim "must

demonstrate that the alleged federal violation occurred because of a municipal policy or custom"). The requirements for a valid § 1983 claim against a municipality apply equally to a private corporation such as Corizon that performs a traditional state function, like providing healthcare to inmates. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). *See also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x. 459, 465 (6th Cir. 2001) (recognizing that *Monell's* holding has been extended to private corporations); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851-52 (E.D. Mich. 2008).

The case of *Jones v. Prison Health Servs.*, No. 11-cv-12134, 2011 WL 7630364 (E.D. Mich. Dec. 14, 2011), is analogous to the instant case, and demonstrates why Burley's complaint fails to adequately state a claim for relief against Corizon. In *Jones*, a prisoner brought suit against Prisoner Health Services ("PHS"), a private entity, and several individual PHS employees, alleging violations of his Eighth Amendment rights. *Jones*, 2011 WL 7630364, at *1. Jones had complained of a doctor delaying treatment and individual defendants violating MDOC procedures. *Id*. at 2. However, Jones did not allege facts demonstrating that PHS had a policy or practice that resulted in the alleged constitutional violation, nor link the policy or practice to the alleged constitutional violations by the individual defendants. *Id.* Noting that Jones' complaint was "premised on nothing more than *respondeat superior* liability," the court granted PHS's motion to dismiss. *Id.*

Here, like the plaintiff in *Jones*, Burley failed to allege any facts which could show that Corizon, through a policy, custom, or practice, violated his constitutional rights. He does invoke the words "policy, custom, or practice" in alleging that Corizon has a "policy, custom, or practice of not providing pain medicine to indigent prisoners" and a "practice, custom and policy to discriminate against persons with hearing impairments"[3] (Doc. #1 at 7), but such "threadbare" conclusory assertions are clearly not sufficient to satisfy the pleading standards discussed above. *See supra* at 4-6; *Hogan*, 2015 WL 3916084, at *3 (quoting *Iqbal*, 556 U.S. at 678); *Twombly*, 550 U.S. at 555. Moreover, Burley fails to connect these alleged policies to the gravamen of his complaint – Abdellatif's alleged refusal to treat Burley on account of Burley being Jewish. *See Maldonadodeher v. Corizon Med. Servs. Inc.*, No. 2:16-CV-21, 2016 WL 6208705, at *2 (W.D. Mich. Aug. 11, 2016), *report and recommendation adopted*, No. 2:16-CV-21, 2016 WL 6161558 (W.D. Mich. Oct. 24, 2016) ("A plaintiff that sues a private or public corporation for constitutional violations under § 1983 must establish that a policy or custom *caused* the alleged injury. . . . Plaintiff's complaint fails to set forth any policy on behalf of Corizon that *caused* the alleged deprivation of his rights.") (internal citations

---

[3] Burley fails to even identify what the policy or practice in question might be. He alleges Corizon "[delayed Burley] from obtaining a new hearing aid . . . with malicious intent, with sole purpose of reaping capital gain." (Doc. #1 at 6). But Burley does not provide any alleged facts from which the Court could draw the "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). He does not indicate why he believes any alleged delay was the result of a policy or practice, any other examples of when prisoners were denied hearing aids, or the length of any delay in receiving his hearing aid.

omitted) (emphasis added).

Burley concedes in his response to Defendants' motion that "Corizon cannot be held liable under the theory of *respondeat superior*."  (Doc. #57 at 16).  However, he attempts to introduce a new argument: that Corizon failed to supervise Abdellatif, "encouraged" him, and "acquiesced" where they "had full opportunity to remedy the wrong, however, they elected not to."  (*Id*. at 16-17).  This Court need not consider Burley's new argument.  It is axiomatic that a plaintiff may not amend his complaint through allegations made in a response to a motion to dismiss. *See Jocham v. Tuscola Cnty.*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003) (holding plaintiff may not amend his complaint through arguments in his brief in opposition to motion).  While Burley is proceeding *pro se*, and is thus is entitled to some leniency, he is still required to be aware of, and abide by, the rules and procedures of this Court.  *Spruce v. Chase Bank*, No. 13-CV-10711, 2014 WL 4145340, at *3 (E.D. Mich. Aug. 20, 2014) (*pro se* plaintiffs, "no less than attorneys, are expected to comply with procedural rules.").

Further, Burley is not just any *pro se* litigant, but has frequently litigated in the Eastern and Western Districts of Michigan, and thus is more familiar with such basic federal court pleading requirements than other *pro se* prisoners might be.[4]  The Court will

_____

[4] *See e.g. Burley v. Michigan Dep't of Corr.*, No. 16-CV-10712, 2017 WL 1078370 (E.D. Mich. Mar. 22, 2017); *Burley v. Martin*, No. 1:12-CV-308, 2013 WL 1437564 (W.D. Mich. Apr. 9, 2013), *aff'd* (Dec. 19, 2013); *Burley v. Miller*, 241 F. Supp. 3d 828 (E.D. Mich. 2017); *Burley v. Cooley*, No. 1:15-CV-320, 2016 WL 1161086 (W.D. Mich. Mar. 23, 2016), *aff'd sub nom. EDWARD BURLEY v. THOMAS COOLEY, ET AL* (Apr. 14,

therefore not countenance Burley's failure to follow the Federal Rules' pleading requirements by permitting him to further amend his complaint through his response to the Defendants' dispositive motion.[5]  *Jocham*, 239 F. Supp. 2d at 732.

In sum, Burley's constitutional claims against Corizon fail as they are nothing more than an attempt to impose *respondeat superior* liability, and because he failed to allege facts establishing that Corizon had a policy, custom, or practice that resulted in a violation of his constitutional rights.  Accordingly, those claims should be dismissed.

### 3.    Eighth Amendment Claims against Abdellatif and Farris

Burley alleges that Abdellatif and Farris were deliberately indifferent to his medical needs, amounting to cruel and unusual punishment in violation of the Eighth Amendment.  (Doc. #1 at 3, 5).  "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment."  *Horn by*

---

2016); *Burley v. Prelesnik*, No. 11-CV-11258, 2013 WL 5538785 (E.D. Mich. Oct. 8, 2013); *Burley v. Daniels*, No. 1:15-CV-570, 2015 WL 3796288 (W.D. Mich. June 18, 2015), *aff'd* (Jan. 25, 2016); *Burley v. Leslie*, No. 1:13-CV-599, 2016 WL 4548631 (W.D. Mich. Sept. 1, 2016); *Burley v. Rider*, No. 2:17-CV-10110, 2017 WL 343626 (E.D. Mich. Jan. 24, 2017).

[5] Even were the Court to consider Burley's new argument premised on supervisory liability, it would fail.  To state a claim based on supervisory liability, "a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Bellamy,* 729 F.2d at 421). Here, far from providing factual allegations meeting that required showing, Burley stakes his argument on the theory that it "was reasonable [for Corizon] to foresee that Abdellatif (a Syrian) harbored hatred for the Jewish Community."  (Doc. #57 at 18).

*Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994), *cert. denied*, 513 U.S. 873 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law."  *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976)).

Defendants argue that they "did provide appropriate medical care to [Burley] and . . . their decisions were based on what treatment was medically indicated at the time." (Doc. #55 at 31).  They also assert that "[Burley] concedes that he saw Dr. Abdellatif on June 23, 2015, and further states that Dr. Abdellatif 'took [his] vitals' before canceling any of his accommodations.  Accordingly, [Burley's] claims 'involve a mere difference of opinion between him and medical personnel regarding his treatment' as such, [he] does not state a claim under the Eighth Amendment."  (Docs. #58 at 6-7; #1 at 22) (quoting *McFarland v. Austin*, 196 F. App'x 410, 411 (6th Cir. 2006)).

### a.  Abdellatif

Taking Burley's allegations against Abdellatif as true, Burley has stated a cognizable Eighth Amendment claim against him.  The Sixth Circuit has succinctly explained the standards a plaintiff must satisfy to state a claim for deliberate indifference to his serious medical needs:

A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component.  The objective component requires the existence of a sufficiently serious medical need.  To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish."  Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it."  Mere negligence will not suffice.  Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (internal citations omitted).  Moreover, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  As the Sixth Circuit has recognized, the requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."  *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

Here, Abdellatif has not specifically challenged the objective component of Burley's claim, and Burley alleges "excruciating" pain and suffering as a result of Abdellatif's failure to treat his "chronic asthma and other respiratory complications"

(Doc. #1 at 3, 6, 22), as well as his "heel pains, stomach pains, and other pains complained of." (*Id*. at 7). Burley also alleges he suffers from "serious asthma attacks." (*Id*.). Importantly, it appears that Burley had been prescribed accommodations for these conditions which Abdellatif canceled during the appointment in question. (Doc. #1 at 25-26). Although Burley's allegations regarding the nature and seriousness of his medical needs may ultimately be belied by the evidence such that Abdellatif could be entitled to summary judgment on this issue, *see Blackmore v. Kalamazoo County*, 390 F.3d 890, 897-98 (6th Cir. 2004); *see also Tate v. Campbell*, 85 F. App'x 413, 418 (6th Cir. 2003) ("a medical judgment by a prison doctor that no medical restriction is needed does not rise to the 'deliberate indifference to serious medical needs' which creates an Eight[h] Amendment violation."), at least at this stage of the proceedings, dismissal of Burley's Eighth Amendment claim against Abdellatif is not warranted.[6]

Abdellatif's motion also fails as to the subjective component of Burley's deliberate indifference claim. Not only did Burley allege in his complaint that Abdellatif would not treat him because Burley is Jewish (Doc. #1 at 3, 5, 22), but, as noted *supra* at n.1, he attached to his complaint the declaration of inmate Crowell, who specifically avers that he heard Abdellatif tell Burley "I am not able to see you because you are a Jew." (*Id*. at

---

[6] Moreover, as noted above, in their motion to dismiss Defendants impermissibly argue the facts, asserting that they "did provide appropriate medical care to Plaintiff and . . . their decisions were based on what treatment was medically indicated at the time." (Doc. #55 at 31). Again, these are issues to be addressed at the summary judgment stage, not in a motion to dismiss.

22-23).  While such a statement by a licensed physician would be extremely unusual, at the motion to dismiss stage, the Court must presume the plaintiff's *factual*[7] allegations to be true.  Doing so here, Burley has pled sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  More than mere negligence, the purported religious-based animus Burley alleges, if credited, would reflect the "sufficiently culpable state of mind" necessary to state a claim of deliberate indifference. Further, taking Burley's allegations as true, it stands to reason that Abdellatif was aware a substantial risk of serious harm existed.  Burley's alleged conditions were chronic and this was a chronic care visit.  (Doc. #1 at 3).  Burley does not allege a mere "misdiagnosis of an ailment," but rather that, on account of his religion, Abdellatif refused him *any* medical care, and canceled other accommodations that had been previously prescribed.

In sum, Burley has alleged that Abdellatif knew of his medical needs related to his chronic respiratory distress and other ailments, and refused to treat him because Burley was Jewish.  (Doc. #1 at 3).  At least at the motion to dismiss stage, these allegations are sufficient to permit Burley's Eighth Amendment claim to proceed as to Abdellatif.

### b. Farris

Burley's deliberate indifference claim against Farris consists of mere legal

---

[7] While the overwhelming majority of the allegations in Burley's complaint are far more "buzzword" legal conclusions than factual allegations, Crowell's averment that he heard Abdellatif utter particular words is clearly a factual allegation.

conclusions and "[t]hreadbare recitals of the elements of a cause of action . . ." *Hogan*,

2015 WL 3916084, at *3 (quoting *Iqbal*, 556 U.S. at 678).  For instance, Burley states:

> PA Farris was personally involved in all aspects of the denial of medical care as I personally brought it to her attention that Abdellatif had denied me medical care.  She assured me that I would be treated for my foot problems and acid reflex [sic] problems.

(Doc. #1 at 5).  Critically, Burley fails to plead even basic facts regarding *when* or *how*

Farris (and not Abdellatif) violated his constitutional rights.[8]  The few factual allegations

contained in Burley's complaint at most point to a dispute over the adequacy of medical

treatment, but even that is merely a supposition given the lack of content.

Burley alleges he made "numerous requests" to Farris that she reinstate his special

accommodations, canceled by Abdellatif, which Farris apparently was instructed by

Abdellatif not to reinstate.  (*Id*. at 7).  Elsewhere Burley alleges Farris refused to give him

pain medication for his feet and failed to provide him with sample packs of pain

medication.  (*Id*. at 8).  And, he alleges that Farris "did further conspire to deny me a

medically necessary Hearing Aid for a period of time."  (*Id.* at 6).  These vague and

conclusory statements imply an unexplicated series of interactions between Burley and

Farris and little else;  there is no indication of when or how Burley made these requests,

the *facts* that were supposedly known to Farris that would have made her aware of

---

[8] Burley's allegation that he told Farris about Abdellatif denying him care does not in itself constitute a Constitutional violation, nor a viable claim for relief.  "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a "mere failure to act."  *Shehee*, 199 F.3d at 300.

Burley's actual needs, nor Farris's basis for denying them. Even taking the above allegations as true, Burley alleges no facts amounting to deliberate indifference to his serious medical needs, and his Eighth Amendment claim pertaining to Defendant Farris should be dismissed.

### 4. First Amendment Claims against Abdellatif and Farris

Burley also alleges First Amendment claims of retaliation and violation of the Free Exercise Clause where Defendants "refused to treat [Burley] for religious purposes." (Doc. #1 at 3).[9] At this stage of the proceedings, Burley's First Amendment retaliation claim against Abdellatif should be allowed to proceed, but his other First Amendment claims should be dismissed for failure to state a claim.

### a. First Amendment Retaliation Claim

A prima facie case for First Amendment retaliation entails three elements: (1) the plaintiff participated in constitutionally-protected activity; (2) the defendant took an adverse action against the plaintiff "likely to chill a person of ordinary firmness" from engaging in the protected conduct; and (3) there is a causal connection between elements one and two – that is, "that the adverse action was motivated at least in part by the plaintiff's protected conduct." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250,

---

[9] Burley also alleges First Amendment claims based on alleged "harassing" and "derogatory" "remarks" regarding his "Jewish faith." (Doc. #1 at 3, 5, 22). To the extent Burley's First Amendment claims are based on such alleged remarks, they should be dismissed. Burley fails to specify the alleged remarks, and "[i]t is well-established that verbal harassment or threats are not actionable under § 1983." *Welch v. Chapman*, No. 07–CV–12334, 2008 WL 544618, at *5 (E.D. Mich. Feb.27, 2008).

255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en

banc)).  The analytical approach in these cases is "intensely context-driven," and while

the elements remain constant between cases, "the underlying concepts that they signify

will vary with the setting." *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir.

2010).  For this reason, whether a statement is "protected" or an official's responsive

action is "adverse" frequently turns on the particular facts of a case.  *Id.*  (citing

*Thaddeus-X*, 175 F.3d at 397).

### i.  Abdellatif

Defendants argue, "[Burley's] Complaint fails to make any specific allegations

whatsoever regarding his First Amendment Retaliation Claim against Defendant

'Abdellatif and other medical personnel.'  [Burley] simply states that he 'alleges[s] that

all aforemention[ed] Defendants' violated his First Amendment rights because they had a

'duty to promptly treat [his] serious medical needs, and failed to do so.'"  (Doc. #55 at

27; Doc. #1 at 6).  At least as to Abdellatif, this is not a fair characterization of Burley's

allegations.

Abdellatif is correct that many of the allegations in Burley's complaint directed to

this claim are conclusory in nature.  For instance, Burley alleges that he "was refused to

be treated by Dr. Abdellatif for religious reasons.  I was refused treatment and

discriminated against based on my religious faith (Judaism). . . . I also submit a First

Amendment Claim [sic] for retaliation . . . by Abdellatif [] where he and others refused to

treat me for religious purposes." (Doc. #1 at 3). However, Burley also attached to his complaint (1) his prior grievance against Abdellatif in which Burley wrote, "on 6/23/15 [] [Abdellatif] stated he could not treat me because I am Jewish . . . he terminated the [office] visit after I informed him that I was on the Vegan line and was Jewish," and (2) the declaration of inmate Crowell who avers that on the June 23, 2015 date in question, he "directly observed" Abdellatif say to Burley, "I am not able to see you because you are a Jew." (Doc. #1 at 12, 23). In arguing for the dismissal of this claim, Defendants failed to discuss these allegations which distinguish this case from *Tate*, 85 F. App'x. at 417-418, on which they rely. (Doc. #55 at 28) (citing *Tate* for the proposition that the "inmate [was] unable to establish retaliation claim for removal of medical restriction where no evidence existed that removal was motivated by protected conduct.").

Abdellatif also argues that Burley "fail[ed] to articulate what protected conduct he engaged in or what adverse action he was subjected to which 'would deter a person of ordinary firmness from the exercise of the right at stake.'" (Doc. #55 at 28) (quoting *Thaddeus-X*, 175 F.3d at 396). The Court disagrees. Burley alleges that he advised Abdellatif that he was Jewish, and that Abdellatif in turn refused to provide him with medical treatment. The protected conduct is being a member of a particular religion,[10]

---

[10] This interpretation of "protected conduct" is also consistent with the Supreme Court's definition of the "free exercise of religion," which "means, first and foremost, *the right to believe* and profess whatever religious doctrine one desires." *See Emp't Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990) (emphasis added). Moreover, a patient advising his doctor about his religion would also constitute protected conduct.

and the adverse action is the alleged denial of medical care.  Moreover, as the Sixth Circuit recently found in *Bey v. Palmer*, No. 16-2790, 2017 WL 2820953, at \*2 (6th Cir. May 23, 2017), "'[t]emporal proximity' between the protected conduct and the adverse action, without more, may provide the basis for inferring at least partial retaliatory intent."  Burley's allegations speak to an immediate temporal connection.

The adverse action alleged by Burley is sufficient to state a claim because the denial of medical care and removal of previously ordered medical accommodations is likely to chill a person of ordinary firmness from engaging in the protected conduct.  *See Smith v. Yarrow*, 78 F. App'x 529, 540 (6th Cir. 2003) (noting that "adverse action" in the prison setting would include "the deprivation of prescribed pain medication.") (citing *Hall v. Nusholtz*, 234 F.3d 1268 (6th Cir. 2000)).

For all of these reasons, Abdellatif's motion to dismiss Burley's First Amendment retaliation claim should be denied.

### ii.     Farris

As for Farris, Burley pleads no set of facts that establish a causal connection between his practice of Judaism and her alleged actions.  While there is no heightened pleading standard regarding this third element of a First Amendment retaliation claim, this does not make a plaintiff's burden trivial.  *Thaddeus-X*, 175 F.3d at 399.  Burley has failed to meet even the minimum pleading standards, failing to allege any connection whatsoever between his protected conduct and Farris's alleged behavior.  He has made no

allegations against her other than the conclusory allegation that she violated his rights by not providing him medical care.  (Doc. #1 at 5) ("I brought it to [Farris's] attention that Abdellatif had denied me medical care.  She assured me that I would be treated for my foot problems and acid reflux problems.").  For this reason, Burley's First Amendment retaliation claim against Farris should be dismissed for failure to state a claim.

### b.  First Amendment Freedom of Religion Claim

In his complaint, Burley states that his "Free Exercise of Freedom of Religious [sic] was violated by Abdellatif and other medical personnel where he and others refused to treat me for religious purposes."  (Doc. #1 at 3).  This is the only mention in Burley's complaint of a "free exercise" claim.  For that reason alone, dismissal of this claim is appropriate.  *See Hogan*, 2015 WL 3916084, at *3 (quoting *Iqbal*, 556 U.S. at 678).  However, dismissal is also appropriate because Burley fails to plead facts sufficient to state a free exercise claim.

The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]."  U.S. Const. amend. I.  The Supreme Court has made clear that inmates "clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To state a § 1983 First Amendment free-exercise claim, a prisoner "must allege facts from which an inference may be drawn that the government has placed 'a substantial burden on the

observation of a central religious belief or practice.'"  *Wofford v. Austin*, No. 1:16-CV-1145, 2016 WL 6275340, at *2 (W.D. Mich. Oct. 27, 2016) (quoting *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)).

Defendants argue that Burley "does not claim to have been prevented from practicing his religion.  At most, he was subjected to a *de minimis* burden.  [He] is no longer being housed at Macomb Correctional Facility."  (Doc. #55 at 29).  The second part of Defendants' argument lacks merit – the mere fact that Burley may have been transferred out of MRF at some unspecified point after the incident in question is neither a proper consideration at the motion to dismiss stage, nor specific enough to show no more than a *de minimis* burden.  Defendants are correct, however, that Burley alleges no facts suggesting that he was prevented from practicing his religion.

While "the Sixth Circuit has never required that an individual plaintiff actually be chilled in the exercise of his First Amendment rights to succeed on a retaliation claim," *Bradford v. Owens*, No. 3:11-CV-P488-DJH, 2016 WL 7015662, at *19 (W.D. Ky. Nov. 29, 2016) (citing *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007) ("Plaintiffs need not show they were actually deterred from exercising their right to free speech, but rather must show the actions were 'capable of deterring a person of ordinary firmness from exercising his or her right[s].'") (quoting *Thaddeus-X*, 175 F.3d at 398)), in the context of a free exercise claim, the Sixth Circuit has held that even an undisputed "one-time interference with the free exercise of religion

is not sufficient to give rise to a constitutional violation." *Talley v. Womack*, No. 1:12CV-P208-M, 2013 WL 2018945 at *2, (W.D. Ky. May 13, 2013). *See also Greenberg v. Hill*, No. 2:07-CV-1076, 2009 WL 890521 at *6 (S.D. Ohio Mar. 31, 2009) ("[I]solated or sporadic government action or omission is de minimis and does not constitute a 'substantial burden.' "); *Cancel v. Mazzuca*, 205 F.Supp.2d 128, 142 (S.D.N.Y. 2002) (finding that an "isolated denial, such as having to miss a single religious service, does not constitute a substantial burden on a prisoner's right to practice his religion"). Thus, a plaintiff asserting a free exercise claim must allege a burden on his religious practice that endured at least to some extent as a result of the wrongful conduct. Again, Burley's complaint contains no allegations whatsoever that speak to his religious practice having been so burdened, and he cannot cure that pleading deficiency by making unsupported averments in his response brief (*e.g.*, Doc. #57 at 26-27). *See supra* at 11-12; *Jocham*, 239 F. Supp. at 732.

Accordingly, Burley's First Amendment free exercise claim should be dismissed.

### 5.    Fifth Amendment Claim against Abdellatif and Farris

Burley alleges "all [aforementioned] Defendants did [violate my] First, Fifth, Eighth, [and] Fourteenth Amendment rights . . . ." (Doc. #1 at 6). This is the only mention of the Fifth Amendment in Burley's complaint, and for that reason alone Burley fails to state such a claim for relief. *See Hogan*, 2015 WL 3916084, at *3 (quoting *Iqbal*, 556 U.S. at 678); *Twombly*, 550 U.S. at 555. However, Defendants interpret this as a

claim that Burley was denied his property, in the form of certain medical accommodations, without due process of law, and Burley does not argue otherwise. Accordingly, interpreting Burley's complaint liberally, the Court will analyze his allegations under the same theory.   Doing so, Burley's complaint fails to state a cognizable Fifth Amendment claim.

"The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Scott v. Clay Cnty. Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000); *Public Util. Comm'n v. Pollak*, 343 U.S. 451, 461-62 (1952).   Burley was being held at a MDOC facility, MRF, at the time the events in his complaint transpired, and Abdellatif and Farris were acting as agents of the state of Michigan, not the federal government.   Accordingly, Burley's Fifth Amendment claim against Defendants should be dismissed.

### 6.    Fourteenth Amendment Claims against Abdellatif and Farris

#### a.  Due Process Claim

Assuming Burley intended to bring his Fifth Amendment deprivation of property claim under the Fourteenth Amendment's Due Process Clause, his claim is barred by the *Parratt* Doctrine and dismissal is appropriate.   A recent Western District of Michigan case, *Moore v. Fegan*, No. 2:15-CV-142, 2015 WL 7777271, at *7-8 (W.D. Mich. Dec. 2, 2015), aptly explains the doctrine:

Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.   If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Burley has not adequately pled the inadequacy of state post-deprivation remedies. Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  Mich. Comp. Laws § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.

26

Burley does not allege any reason why a state-court action would not afford him complete relief for an alleged deprivation of his personal property.  Accordingly, as to Burley's due process claim, Defendants' motion to dismiss for failure to state a claim should be granted.

### b.    Equal Protection Claim

Burley alleges an equal protection claim against Abdellatif and Farris where "they failed to treat me the same as they treated other prisoners."  He states "I am a protected class of prisoner under Judaism tenets and [the] ADA . . . ."  (Doc. #1 at 3).  Defendants argue Burley's claim is conclusory and that he fails to allege facts showing that each Defendant demonstrated the required discriminatory animus.   (Doc. #55 at 24-25).  Taking Burley's allegations as true, he has adequately pled facts which would establish discriminatory animus and a valid claim against Abdellatif.  But because Burley offers no allegations to support his claims against Farris, his claim against her should be dismissed.

The Equal Protection Clause forbids a state from denying "to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1, and enshrines the ideal that "all living persons similarly situated should be treated alike*." Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).   The purpose of the Equal Protection Clause is to protect every person against intentional or arbitrary discrimination by the government, "whether occasioned by express terms of a statute" or the improper conduct of government agents.  *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir.

2005) (quoting *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923)).

Religion may be the basis for a protected class, *see Day v. Mathai*, No. 05-CV-71311, 2008 WL 907378, at \*10 (E.D. Mich. Mar. 7, 2008), *report and recommendation adopted*, No. 05-71311, 2008 WL 907377 (E.D. Mich. Mar. 31, 2008), and Burley claims he is a "protected class of prisoner under Judaism tenants." (Doc. #1 at 3). Burley also alleges Abdellatif specifically *told* him he was discriminating against Burley based on Burley's identification as Jewish. In addition, Burley presents the declaration of inmate Crowell, who averred that he heard Abdellatif tell Burley "I am not able to see you because you are a Jew." (Doc. #1 at 23). At this stage of the proceedings, taking these allegations as true, Burley's claim should be allowed to proceed against Abdellatif. Burley adequately alleges he was denied medical care by Abdellatif based solely on his religion, and that Abdellatif treated him differently than other non-Jewish prisoners by denying him care.[11] Thus he has stated a cognizable equal protection claim against

---

[11] In their reply brief, Defendants point out that Burley's response brief contains averments that seemingly contradict allegations in his complaint regarding his Equal Protection claim (and, which may undermine all of his claims). (Doc. #58 at 5). Specifically, Burley states he was the "only practicing Jew that was discriminated against and harassed. To Plaintiff's knowledge . . . no other Jewish prisoner was denied medical attention due to their religious affiliation." (Doc #57 at 20). Burley also emphasizes that MRF is a "Jewish facility" with "40 practicing Jews," none of whom apparently faced discrimination. (*Id*. at 18, 26). Burley also alleged in his complaint that there was another Jewish prisoner in the medical area, ostensibly receiving medical treatment, *during* the incident in which he was being denied medical treatment. (Doc. #1 at 22). Thus, Burley's own averments do seem to belie his allegations of religious-based discrimination. However, Burley's allegation (and Crowell's averment) that Abdellatif directly told Burley his motives were discriminatory is sufficient at this early stage to

Abdellatif.  However, because Burley offers *no* factual allegations whatsoever indicating any such discrimination on the part of Farris, Defendant's motion to dismiss should be granted as it pertains to her.

Burley also indicates he is a member of a protected class because he is hearing impaired, and seems to allege discrimination based on this status as well.  (Doc. #1 at 5).  But as discussed *infra* at 31-33, he offers no factual allegations to support this conclusion.  Nothing in Burley's complaint indicates that any of the Defendants discriminated against him based on this alleged impairment, and so he has failed to state a claim on this basis.

### 7.    Conspiracy Claims

Burley alleges a conspiracy between Abdellatif, Farris and Corizon to deny him medical care and to deprive him of his medical accommodations, presumably under 42 U.S.C. § 1985.  (Doc. #1 at 5-6).  42 U.S.C. § 1985(3)—the only relevant subsection of the statute—forbids two or more persons from conspiring to deprive another person of the equal protection of the laws.  To establish a claim under § 1985(3), "a plaintiff must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States."  *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994).  The plaintiff also must

overcome Abdellatif's motion to dismiss.

demonstrate that "the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).  In other words, "[t]o sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it." *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010).

Here, Burley alleges he is a member of a protected class based on his identification as Jewish, but he has not alleged any facts that would indicate *Farris or Corizon* were in any way motivated by class-based, discriminatory animus.  "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991) (internal citations omitted).  Thus, even taking Burley's allegations that Abdellatif refused to provide him medical care on account of Burley's religion as true, Abdellatif alone cannot have conspired against Burley.  Accordingly, Burley fails to state a claim under § 1985(3), and his conspiracy claim should be dismissed.

Burley's conspiracy claim against Corizon also fails for an additional reason.  The intracorporate conspiracy doctrine provides that "a corporation cannot conspire with its own agents or employees." *Hull*, 926 F.2d at 509.  "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy.  A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that

the acts of the agent are the acts of the corporation." *Id.*  For this reason too, Burley has

failed to state a valid conspiracy claim against Corizon.  *See Boone v. Heyns*, No. 12-

14098, 2017 WL 3977524, at *4 (E.D. Mich. Sept. 11, 2017) (dismissing plaintiff's claim

that Corizon conspired with its employees "under the Sixth Circuit's general rule in civil

conspiracy cases that a corporation cannot conspire with its own agents or employees.").

### 8.   ADA Claims

Burley alleges that "all [Defendants] failed to offer an equal protection under the

ADA for plaintiff's documented disability (profound hearing loss), and did further fail to

treat plaintiff with the same safeguards and protections as they treated other similarly

situated [persons]."  (Doc. #1 at 6).  Burley fails to expand upon this claim or allege how

Defendants treated him differently based on his disability, and this claim should be

dismissed.

Burley alleges Abdellatif and Farris conspired "to deny me a medically necessary

hearing aid for a period of time . . . ."  (*Id.*)  Elsewhere in his complaint, Burley alleges

that Corizon "did delay and impede the replacement of a new hearing aid for a protracted

period of time" for Burley and that this is part of a "practice, custom and policy to

discriminate against persons with hearing impairments."  (*Id.*)  Critically, Burley offers

no factual allegations to support these claims.  He does not indicate how long he was

allegedly denied a hearing aid, or how that impacted him (he appears to be complaining

about the *replacement* of an existing hearing aid), and it appears undisputed that Burley

31

was ultimately provided with a new hearing aid.  Because Burley offers only the barest of "conclusory statements," this claim should be dismissed.  *Hogan*, 2015 WL 3916084 at *3 (quoting *Iqbal*, 556 U.S. at 678).

Furthermore, to the extent Burley brings his ADA claim against Corizon, dismissal is warranted because Title II of the ADA does not apply to it.  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132. The Act further provides that "[t]he term 'public entity' means (A) any State or local government;  (B)  any  department,  agency,  special  purpose  district,  or  other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)."  42 U.S.C. § 12131(1).  Corizon is neither a state or local government, nor a department, agency, or instrumentality of the state.  Further, "[a] private contractor does not become a 'public entity' under Title II merely b[y] contracting with a governmental entity to provide governmental services."  *Cox v. Jackson*, 579 F. Supp. 2d 831, 852-53 (E.D. Mich. 2008); *see also Matthews v. Penn. Dep't of Corr.,* 613 F.App'x. 163, 169 (3d Cir. 2015)(affirming dismissal of statutory claims against defendants who "are not public entities subject to suit under the ADA"); *Phillips v. Tiona*, 508 F.App'x. 737, 754 (10th Cir. 2013) ("Title II of the ADA does not generally apply to private corporations that

operate prisons.")  Thus, Corizon is not a "public entity" under § 12131 and is therefore not subject to suit under the ADA.

### 9.    State Law Claims of Gross Negligence and IIED

Burley alleges that Farris "demonstrated gross negligence," and states "I am specifically alleging that Abdellatif demonstrated gross negligence."  (Doc. #1 at 7).  He also alleges, "Abdellatif . . . did further subject me to intentional infliction of extreme emotional distress," (*Id.* at 5), and Farris "did subject me to extreme emotional infliction of distress [sic]."[12]   (*Id.* at 6).  These Defendants in turn argue that Burley's claims of gross negligence and IIED, because they stem from a professional relationship involving medical judgment, sound in medical malpractice in Michigan.  (Doc. #55 at 29-32).  In his response brief, Burley states that Defendants "completely [misconstrue] the essence of my claims.  I did not plead gross negligence on any of the [] parties."  (Doc. #57 at 23).  He further explains that based on his interpretation of case law, gross negligence equates to deliberate indifference to his medical needs.  (*Id.*).  Elsewhere in his response, however, Burley states he is bringing a "deliberate indifference claim, and in the alternative theory that Defendant Abdellatif was grossly negligent."  (*Id.* at 24).  Because Burley does seem to be alleging gross negligence or IIED against Abdellatif and Farris[13]

---

[12] Even reading Burley's complaint liberally, he does not assert a claim of gross negligence and IIED against Corizon.

[13] The Court has already addressed Burley's Eighth Amendment claim of deliberate indifference above. *See supra* at 12-18.

as *alternative theories* for relief, the Court will address these claims as well.

Defendants argue that Burley's gross negligence and IIED claims should be dismissed because they sound in medical malpractice which imposes certain statutory requirements upon plaintiffs that Burley has not met. (Doc. # 55 at 29-32). *See* M.C.L. § 600.2912. "A complaint cannot avoid the application of the procedural requirements of a malpractice action by couching its cause of action in terms of ordinary negligence." *Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26, 43, 594 N.W.2d 455 (1999); *see also Adam v. Sisters of Bon Secours Nursing Care Ctr.*, 2011 WL 3903146, at *4 (Mich. App. Sept. 6, 2011) (same analysis applies to claims of gross negligence).

The Michigan Supreme Court has set forth a two-part test for determining whether the nature of a claim is medical malpractice (as opposed to the plaintiff's alternate label). *See Bryant v. Oakpointe Villa Nursing Ctr., Inc.*, 471 Mich. 411, 422, 684 N.W.2d 864 (2004). First, did the alleged conduct occur "within the course of a professional relationship?" and, second, do the allegations "raise questions involving medical judgment?" *Id*.

With respect to the first factor, the Michigan Supreme Court has defined a professional relationship as one in which "a licensed health care professional, licensed health care facility, or the agents or employees of a licensed health care facility, were subject to a contractual duty that required that professional, that facility, or the agents or employees of that facility, to render professional health care services to the plaintiff." *Id*.

There can be no doubt that the conduct at issue here occurred within the course of a professional relationship. (Doc. # 1).

The real dispute here concerns the second *Bryant* factor. In determining whether a plaintiff's allegations raise questions involving medical judgment, the Michigan Supreme Court has noted that, "[i]f the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence." *Bryant*, 471 Mich. at 423, 684 N.W.2d 864. If, however, "the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved." *Id*. Allegations regarding staffing decisions and patient monitoring often involve questions of professional medical judgment that are not considered matters jurors can judge by their common knowledge and experience. *See Fisher v. Cnty. of Macomb*, 2011 WL 2414413, at *14 (E.D. Mich. June 14, 2011) (citing *Bryant*, 471 Mich. at 426, 684 N.W.2d 864). The *Fisher* court also noted, however, that not all matters in this area require expert testimony, explaining that "a claim that the defendants did nothing in response to a known risk could be evaluated based on common experience if it was clear that something should have been done." *Id*. at *15 (citing *Bryant*, 471 Mich. at 430, 684 N.W.2d 864).

At least at this stage of the case, Defendants have not shown that application of the *Bryant* test to Burley's claims compels a conclusion that those claims sound in

malpractice as to Abdellatif: Burley has made allegations from which one could conclude, based on "common knowledge and experience," that Abdellatif's alleged refusal to provide him medical treatment based on his religion were unreasonable. *Bryant*, 471 Mich. at 423, 684 N.W.2d 864.   Burley's allegations as to Abdellatif's actions are akin to a claim that he "did nothing in response to a known risk," which is a matter of negligence, not medical malpractice.   *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 824, 846 (W.D. Mich. 2012) (citing *Bryant*, 471 Mich. at 430-31, 684 N.W.2d 864); *see also Fisher*, 2011 WL 2414413, at *15 (same).   Burley's gross negligence and IIED claims against Abdellatif should therefore be allowed to proceed.

However, to the extent Burley alleges gross negligence and IIED on the part of Farris, Burley's claims should be precluded by the *Bryant* test discussed above.   Burley alleges Farris "did subject [him] to extreme emotional infliction of distress [sic]" when she wouldn't give him proper medical care.   (Doc. #1 at 6).   Burley alleges she "did . . . fail to provide necessary care and treatment of [Burley] for an injured back by not providing [him] with necessary accommodations consistent with a proper standard of care and treatment."   (*Id*.).   What is a proper standard of care and treatment is exactly the kind of question that jurors cannot determine based on their common knowledge and experience.   Thus, Burley's claims against Farris sound in medical malpractice.   Because Burley has not followed the statutory procedures required to file a medical malpractice claim under Michigan law, his claims against Farris should be dismissed.   *See Bryant,*

36

471 Mich. at 423, 684 N.W.2d 864 (where "the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved.").

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss **(Doc. #55)** be **GRANTED** as to Corizon and Farris, and **GRANTED IN PART AND DENIED IN PART** as to Abdellatif.  Abdellatif's motion should be **GRANTED** as to Burley's Americans with Disabilities Act, conspiracy, First Amendment free exercise, Fifth Amendment and due process claims, and **DENIED** as to his First Amendment retaliation, Eighth Amendment, equal protection, gross negligence and intentional infliction of emotional distress claims.


Dated: January 26, 2018                          s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections

constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).   Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).   Copies of any objections must be served upon the Magistrate Judge.   *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.   *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).   Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 26, 2018.

s/Eddrey O. Butts_____
EDDREY O. BUTTS
Case Manager
