UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD BURLEY,

                    Plaintiff,          Civil Action No. 16-cv-12256
                                        Honorable Arthur J. Tarnow
          v.                            Magistrate Judge David R. Grand

BADAWI ABDELLATIF, *et al.*,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT BADAWI ABDELLATIF'S MOTION FOR SUMMARY JUDGMENT [117]

On June 17, 2016, Plaintiff Edward Burley ("Burley"), an incarcerated person, brought this action against Defendants Dr. Badawi Abdellatif ("Abdellatif"), Erin Parr-Mirza ("Parr-Mirza"), Heather Cooper ("Cooper"), Corizon Health, Inc. ("Corizon"), Kim Farris ("Farris"), and Joanne Sheldon ("Sheldon"), alleging violations of his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Since that time, the Honorable Arthur J. Tarnow has issued a series of rulings which resulted in the dismissal of all claims against all defendants except for Burley's First Amendment retaliation, Eighth Amendment, equal protection under the Fourteenth Amendment, gross negligence, and intentional infliction of emotional distress ("IIED") claims against defendant Abdellatif. (ECF No. 59; No. 78.) Before the Court for a Report and Recommendation is Abdellatif's Motion for Summary Judgment as to the remaining claims. The motion has been fully briefed. (ECF Nos. 117, 126, 133.) Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). The facts and legal issues are adequately presented in the briefs and on the record, and the Court declines to order a hearing.

## I.      RECOMMENDATION

For the reasons discussed below, it is **RECOMMENDED** that Abdellatif's Motion for Summary Judgment (**ECF No. 117**) be **GRANTED** with regard to Burley's Eighth Amendment, Fourteenth Amendment and IIED claims, but **DENIED** as to his First Amendment retaliation and gross negligence claims.

## II.     REPORT

### A.      Background

At all times relevant to this action, Burley was an inmate at the Macomb Correctional Facility ("MRF"), a prison operated by the Michigan Department of Corrections ("MDOC").   Burley's claims center around a June 23, 2015 chronic care visit he had scheduled with Dr. Abdellatif regarding issues Burley was having with his feet and stomach.[1]  (ECF No. 118, PageID.1256-57.)  Burley alleges that Dr. Abdellatif took his vitals, but then, after Burley mentioned that he "was on the Vegan line and was Jewish," Abdellatif abruptly terminated the appointment, and canceled "accommodations for foot soaks, bottom bunk, [] ground floor, and heel pads" that had been previously ordered for Burley.  (ECF No. 117, PageID.1032.)  More specifically, Burley testified:

> When I told the doctor this he became very irate.· Very condescending stating -- I was sitting on the table -- that I could not see you, I could not see you, you Jew, and he asked me to leave.· Then he proceeded to open the door.
>
> I recall him opening the door and he was holding his hand out for me to depart, making gestures for me to get out of the office.· I was very bewildered, in shock.

---

[1] At his deposition (ECF No. 117-3 ("Burley dep.")), Burley testified that at the beginning of the appointment he attempted to explain to Abdellatif that he was also having difficulties with his breathing. (Burley dep. at 14.)  However, the medical records leading up to the visit with Abdellatif make no mention of this issue.  (ECF No. 118, PageID.1256-57.)  And, when Burley filed a grievance against Abdellatif about the issues giving rise to this civil action, Burley wrote, "I grieve Dr. Abdellatif for denying medical treatment for my heel spurs and acid reflux," again making no mention of a breathing issue.  (ECF No.1, PageID.12.)

(Burley dep. at 14-15.)

While it seems quite unthinkable that a prison doctor would refuse to treat a prisoner because the prisoner mentioned that he practiced a particular religion, Burley provided an affidavit and declaration of two fellow inmates, Paul Ayotte and Richard Crowell,[2] who confirm Burley's version of events.  Ayotte avers that he was present in medical at the time in question, and that he "personally observed Dr. Abdellatif tell prisoner Burley that he could not treat him because 'you are a Jew.'"  (ECF No. 126-3, PageID.1380.)  Ayotte also noted that Corrections Officer Tregumbo was present at the time and "appeared to be startled by Dr. Abdellatif's statement."  (*Id.*)  Crowell avers that he "personally [saw] Dr. Abdellatif usher [Burley], using sweeping motions, out of his office on June 23, 2015, stating 'I am not able to see you because you are a Jew.'  I directly observed this on 6/23/15 while up at medical getting my medications."  (ECF No. 1, PageID.23.)[3]

The medical records include one from the date in question in which Dr. Abdellatif wrote:

> Comments: Normal dry clean feet , no edema or swelling any where, he came in limping badly but when exam done and asked to buy OTC meds he walked out fine, he claimed sever unbearable tenderness at heel when I was palpating them.
>
> **Assessment/Plan**
> Spur, calcaneal (726.73)
> Plan comments: Stated long Hx of heel pain increased in last year , note that he injured his hand few months ago playing BB, note that he came in to my

---

[2] In his response brief, Burley references Crowell's deposition testimony, but the exhibit Burley cited to was a transcript of Ayotte's deposition. (ECF No. 126, PageID.1357.)  At any rate, Abdellatif does not argue that Crowell testified contrary to the averments in his affidavit.

[3] While Abdellatif characterizes Ayotte's and Crowell's averments as "unreliable" (ECF No. 133, PageID.1444), it is not clear why that is so.  Abdellatif did not show that Ayotte and Crowell were not at medical during the time in question, and he did not submit an affidavit or deposition testimony from Officer Tregumbo.  At any rate, the Court may not make credibility determinations in ruling on a summary judgment motion.  *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010).  Obviously, this principle applies equally with respect to Burley's attempt to impugn Abdellatif's credibility at this stage of the proceedings by referencing a July 2017 "Stop Order" issued against him by the MDOC, although the circumstances giving rise to that Stop Order are clearly relevant to Abdellatif's credibility.  (Sealed ECF No. 121, PageID.1326; Sealed ECF No. 121-4.)

> office limping badly and when examination done and asked to buy OTC meds
> he left walking fine and left saying you not a real doctor and you have hundred
> [sic] of law suits against you, Patient said the salking [sic] tubs ordered by the
> PA didnt [sic] at all, will DC, his hearing was fine too today occasionally I
> had to repeat my words but mostly he heared [sic] me in my regularl [sic] low
> voice very well.  [sic] As for BB will DC details and [accommodations] for
> that , he does 1000 pushups a day same for situps, he plays BB , no need for
> these [accommodations]

(ECF No. 118, PageID.1260.)  Abdellatif testified consistent with the medical record.  (ECF No. 117-2,

PageID.1068.)

Burley disputes Abdellatif's version of the events, and insists that Abdellatif did not perform any

examination whatsoever of his feet.  (*E.g.*, Burley dep. at 19-20; ECF No. 1, PageID.17.)  Burley also

claims he never told Abdellatif that he played basketball or did sit ups, and that in fact, he did not engage

in those activities at all.  (Burley dep., at 22, 38.)  He presents the affidavit of his cellmate, Leo Zuniga,

who avers that he and Burley spend approximately 23 hours a day together and that "[a]t no time [has he]

ever seen Mr. Burley do any type of exercises whatsoever."  (ECF No. 126-3, PageID.1379.)

Thereafter, Burley continued to receive some treatment for his feet.  (ECF No. 118, PageID.1264-

1274, 1279-1285.)  This included Abdellatif ordering an x-ray of Burley's feet on July 28, 2015.  (*Id.*,

PageID.1282.)  On July 30, 2015, the x-rays were reviewed by a different doctor who found Burley to

have "normal feet." (*Id.*, PageID.1285.)  Just two days later, though, apparently based only on complaints

by Burley, a nurse reinstated his accommodation for twice daily "foot soaks." (*Id.*, PageId.1289-91.)  At

a September 29, 2015 appointment, the nurse's "objective" findings included that Burley's feet were

swollen.  (*Id.*, PageID.1293.)  However, just two days later, on October 1, 2015, Abdellatif examined

Burley's feet, found they were not swollen, and again canceled the foot soak accommodation.  (*Id.*,

PageID.1296.)

A number of months later, Burley transferred to a different prison, and he has not been receiving

any treatment for his feet at that facility as his pain has essentially resolved.  (Burley dep. at 20-21.)

Abdellatif now moves for summary judgment as to all of Burley's claims.

      **B.**      **Standard of Review**

Federal Rule of Civil Procedure 56 provides: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual

dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

    **C.**    **Analysis**

        **1.**    **Eighth Amendment Claim**

Burley alleges that Abdellatif's cancelation of his accommodations constitutes "deliberate indifference" amounting to cruel and unusual punishment in violation of the Eighth Amendment. (ECF No. 1.) "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994), *cert. denied*, 513 U.S. 873 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

The Sixth Circuit has explained the standards that a plaintiff must satisfy to state a claim for deliberate indifference to his serious medical needs:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Correctional Medical Servs., Inc.*, 478 F. Appx. 971, 975 (6th Cir. 2012) (internal citations omitted).

"The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection." *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). A serious medical condition is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2nd Cir.

6

1994).  To satisfy this component, the conduct must deprive the prisoner of "the minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 349.  A "serious medical need" must be more than "mere discomfort or inconvenience."  *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (internal quotations omitted).  The objective component is responsive to "contemporary standards of decency."  *McMillian*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

With regard to this component, Abdellatif argues that "Burley has not, and cannot show that he had a serious medical need that was diagnosed by a physician as mandating treatment."  (ECF No. 117, PageID.1038.)  In support of this claim, he points to an x-ray done shortly after the June 23, 2015 visit showing that Burley had "normal feet."  (ECF No. 117, PageID.1038-39.)  Burley counters by pointing out that "a [physician's assistant] in April 2015 noted that [he] had pain and it was relieved by over the counter medication and foot soaks."  (ECF No. 126, PageID.1362.)  He also points out that he was prescribed accommodations for his heel pain, including a foot basin, which Abdellatif canceled during the appointment in question.  (*See id.*)

Although this Court found that Burley had *alleged* enough in his complaint to overcome Abdellatif's motion to dismiss, with the evidentiary record now complete, the Court finds that construing the evidence in the light most favorable to Burley, his deliberate indifference claim fails on the objective prong.  First, courts have held that, without more, "painful heel spurs" do not amount to sufficiently serious medical problems warranting Eighth Amendment protection.  *See Herrerra v. MDOC*, 10-cv-11215, 2011 WL 3862640 at *15 (E.D. Mich., July 22, 2011).  Second, Burley admits that immediately after his appointment with Abdellatif he was able to walk.  (Burley dep. at 15.)  Third, medical records show that about three weeks before his appointment with Abdellatif, Burley "[d]enie[d] any pain," and one week before his appointment a nurse found only "slight swelling" on the bottom of his feet.  (ECF No. 118, PageID.1251, 1255.)  Finally, it is undisputed that an x-ray taken from a few weeks after the appointment

in question revealed that Burley had "normal feet" and no heel spurs. (ECF No. 118, PageID.1285.)

In light of the foregoing evidence, the Court finds that Burley failed to raise a material question of fact that his alleged heel pain rose to the level of a serious medical condition protected by the Eighth Amendment, or that Abdellatif's cancelation of accommodations such as a foot soak and heel pads deprived him of "the minimal measure of life's necessities" or subjected him to anything more than "mere discomfort and inconvenience." Accordingly, Abdellatif's motion for summary judgment should be granted as to this claim.

### 2. First Amendment Retaliation Claim

"First Amendment rights, like many other rights, are circumscribed in the prison setting." *Id.* at 390. Yet, the U.S. Supreme Court has made clear that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Here, Abdellatif does not argue that Burley took any action that was inconsistent with his status as a prisoner or that there was any penological objective behind Abdellatif's alleged conduct. Instead, Abdellatif argues that Burley cannot satisfy the elements of a prima facie case for First Amendment retaliation which requires the plaintiff to prove the following three elements: (1) the plaintiff participated in constitutionally-protected activity; (2) the defendant took an adverse action against the plaintiff "likely to chill a person of ordinary firmness" from engaging in the protected conduct; and (3) there is a causal connection between elements one and two – that is, "that the adverse action was motivated at least in part by the plaintiff's protected conduct." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). The analytical approach in these cases is "intensely context-driven," and while the elements remain constant between cases, "the underlying concepts that they signify will vary with the setting." *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010). For this

reason, whether conduct is "protected" or an official's responsive action is "adverse" frequently turns on the particular facts of a case. *Id.* (citing *Thaddeus-X*, 175 F.3d at 397).

If the plaintiff meets his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. *Thaddeus-X*, 175 F.3d at 399. "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.*

### a.  Protected Conduct

As to the first element, Abdellatif explains that, while he "disagrees with Mr. Burley's proposition that he informed him of his Jewish faith during his June 23, 2015 visit, [he] does not dispute that, in the event that the Court does find Mr. Burley to have communicated this information to him, it would be considered protected conduct under the First Amendment." (ECF No. 117, PageID.1041.) It is not the Court's role at this stage to determine the facts, and the Court makes no findings about what did and did not occur on the date in question. However, the Court agrees that Burley's alleged statement to Abdellatif, which occurred during and in relation to a medical appointment, that he was eating a particular diet because he is Jewish, constitutes protected conduct under the First Amendment.[4]  *See Spence v. Washington*, 418 U.S. 405, 409 (1974). Consequently, the Court turns to examining whether the alleged "adverse action" by Abdellatif – refusing to provide Burley with medical care, and removing his

---

[4] The parties do not discuss whether the First Amendment right implicated is Burley's right to freedom of speech or freedom of association, but the elements of a retaliation claim for exercising either right is the same. *See Foster v. Twp. of Pennsauken*, No. CV 16-5117 (JBS/KMW), 2017 WL 2780745, at *14 (D.N.J. June 27, 2017) ("the elements of a freedom of association retaliation claim are the same as the elements of a freedom of speech retaliation claim . . .") (citing *Killion v. Coffey*, —— Fed.Appx. ——, 2017 WL 2628881, at *1 (3d Cir. June 19, 2017). *See also, Oliver v. Spokane Cty. Fire Dist. 9*, 963 F. Supp. 2d 1162, 1172 (E.D. Wash. 2013) ("As to the freedom of association claim, the parties agree that the relevant test is: 1) Plaintiff engaged in protected association; 2) Defendants took an adverse [] action; and 3) Plaintiff's association was a substantial or motivating factor for the adverse [] action.") (citing *Hudson v. Craven*, 403 F.3d 691, 695 (9th Cir. 2005)).

accommodations[5] – is conduct "likely to chill a person of ordinary firmness" from engaging in the protected conduct. *See Thaddeus-X*, 175 F.3d at 396.

### b.    Adverse Action

As the Sixth Circuit has explained, it is not true "that every action, no matter how small, is constitutionally cognizable":

> Like the definition of protected conduct, however, the definition of adverse action is not static across contexts. Prisoners may be required to tolerate more than public employees, who may be required tolerate more than average citizens, before an action taken against them is considered adverse. The benefits of such a standard are that it is an objective inquiry, capable of being tailored to the different circumstances in which retaliation claims arise, and capable of screening the most trivial of actions from constitutional cognizance. We emphasize that while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment. Retaliation against a prisoner is actionable if it is capable of deterring a person of ordinary firmness from exercising his or her [First Amendment rights].

*See Thaddeus-X*, 175 F.3d at 398.

Applying this precedent, the Sixth Circuit has explained, "'[i]n the prison context, an action comparable to transfer to administrative segregation would certainly be adverse,' as would . . . the deprivation of prescribed pain medication . . ." *Smith v. Yarrow*, 78 Fed.Appx.529, 540 (6th Cir. 2003)[6]

---

[5] Abdellatif argues that the medical record from the appointment in question demonstrates that "[t]he alleged 'adverse action' was really a proper medical exam." (ECF No. 117, PageID.1042.) But this fails to recognize that Burley presented evidence well beyond a bald denial of the medical record's contents. In addition to Burley's testimony about the appointment in question, he produced an affidavit and a declaration from two other prisoners who averred that they personally heard Abdellatif state that he could not treat Burley because of his religion. *See supra* at 3-4. Another prisoner's affidavit contains averments that are inconsistent with a statement in the medical record that Burley mentioned doing pushups and playing basketball. *See supra* at 4. In short, both sides produced evidence regarding the medical appointment in question, but at this stage of the case, the Court must construe the evidence in the light most favorable to Burley. *Ciminillo*, 434 F.3d at 464.

[6] The Court notes that in *Smith*, the Sixth Circuit ultimately found that the prison doctor's refusal to treat

(quoting *Thaddeus-X*, 175 F.3d at 396, and citing *Hall v. Nusholtz*, 234 F.3d 1268 (Table), 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000)).  The Sixth Circuit more recently reaffirmed this view in *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014), holding that "a delay in treatment and discontinuance of medication would likely deter a prisoner [], who believed he needed the medication to avoid the symptoms from which he allegedly suffered."  *See also Wash v. Gilless*, No. 99–5036, 2000 WL 659225, at *4 (6th Cir. May 11, 2000) ("[T]he denial of requested medical examinations constitutes an adverse action because it would likely have a strong deterrent effect on an inmate who believed that the tests were necessary to detect a serious medical condition.").  Other courts have reached the same conclusion.  *See, e.g., Thomas v. Brinich*, No. 1:12-CV-1539, 2014 WL 956983, at *5 (M.D. Pa. Mar. 12, 2014), aff'd, 579 F. App'x 60 (3d Cir. 2014) ("A delay in providing, or denial of, medical treatment constitutes adverse action for purposes of a retaliation claim."); *Trautman v. County of Allegheny*, No. 06–1037, 2009 WL 3030215, at *10 (W.D. Pa. Sept.17, 2009) ( "[A] delay or denial of medical treatment would likely deter an individual from making complaints or exercising his or her free speech rights[.]"); *Williams v. Fisher*, No. 02 Civ. 4558(LMM), 2003 WL 22170610, at *10–11 (S.D.N.Y. Sept. 18, 2003) ("Allegations that [a prison doctor] revoked Plaintiff's necessary medical rehabilitative treatment because he filed a grievance are sufficient to satisfy the second element of a retaliation claim [for the purposes of a motion to dismiss.]").  Thus, the Court finds that Burley has at least raised a question of fact as to whether Abdellatif's alleged denial of treatment was "capable of deterring a person of ordinary firmness from exercising" his First Amendment rights in the future.  *Thaddeus-X*, 175 F.3d at 398.

The Court recognizes that there is some incongruity between this finding and its earlier finding

---

the inmate on a single occasion did not constitute an adverse action.  *Id.* at 543-44.  However, the facts in that case are distinguishable because there, the doctor's refusal was indisputably based on the fact that the inmate had a pending civil action against him which created a conflict, the appointment was only for an annual physical, and the doctor advised the prisoner that he could see a different prison doctor.  *Id.*

that Burley's medical need was not sufficiently serious to give rise to a claim for deliberate indifference under the Eighth Amendment.  But that incongruity does not mean these findings cannot stand side by side;  "the adverse act alone does not have to be violative of the Constitution because section 1983 permits suits based on adverse action taken against an individual in response to a constitutionally protected activity." *Diaz-Cruz v. Symons*, No. 1:11-CV-1302, 2016 WL 6248025, at *15 (M.D. Pa. Oct. 26, 2016). Moreover, a prison doctor refusing to provide medical treatment to a prisoner because he identified himself as practicing a particular religion strikes at the First Amendment's very core in a way that other retaliatory conduct does not.  In short, taking Burley's evidence as true, it would not "trivialize the First Amendment" to hold that Abdellatif's alleged conduct was "capable of deterring a person of ordinary firmness from exercising his or her [First Amendment rights]" in the future.  *See Thaddeus-X*, 175 F.3d at 398.

Accordingly, Burley has raised a material question of fact as to the adverse action prong of his First Amendment retaliation claim.

*c.*      *Causal Connection*

The Court having found that Burley raised a material question of fact as to the first two prongs of his First Amendment retaliation claim, there can be no dispute that he similarly raised a question of fact as to the third – "that the adverse action was motivated at least in part by the plaintiff's protected conduct." *Scarbrough*, 470 F.3d at 255.  Burley's evidence, if credited, would at least raise a question of fact as to whether Abdellatif terminated the medical appointment and canceled the accommodations *because* Burley stated that he was Jewish.

*d.*      *Same Action in the Absence of the Protected Activity*

Finally, Abdellatif argues that because he would have taken the same action in the absence of Burley's protected activity, Burley's First Amendment retaliation claim fails.  However, this argument is premised in part on Abdellatif's version of the events at the appointment in question – which the Court

cannot credit at the summary judgment stage – and in part on affidavits from prison nurses who only vaguely aver that Abdellatif's discontinuation of certain of Burley's accommodations was "consistent with his general practice of reviewing new patients' special accommodations and discontinuing those that he determined were medically unnecessary." (ECF No. 117, PageID.1042-43; ECF No. 117-5, PageID.1200; No. 117-6, PageID.1204.) This is insufficient to establish the absence of a material question of fact about whether Abdellatif would have taken the same action on the date in question when he first saw Burley.

For all of the above reasons, Abdellatif is not entitled to summary judgment on Burley's First Amendment retaliation claim.

### 3.    Fourteenth Amendment Claim

Burley also alleges an equal protection claim against Abdellatif, claiming he "failed to treat me the same as [he] treated other prisoners." (ECF No. 1.) This claim has been narrowed to the allegation that Burley was not treated the same as non-Jewish prisoners. (ECF Nos. 60, 78.)

The Sixth Circuit has noted that there is a "difference between constitutional retaliation cases under the Due Process Clause of the Fourteenth Amendment and those arising under a more specific provision of the Constitution," such as the First Amendment. *See Thaddeus-X, supra*, at 387. Indeed, "[i]n order to show the deprivation of a liberty interest protected by the Fourteenth Amendment, a prisoner must show that the act extended the duration of his sentence, or that he suffered an atypical, significant deprivation." *See Ingram, supra*, at 273 (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). This is a more onerous requirement than the First Amendment's requirement that the plaintiff show that he suffered an adverse action "likely to chill a person or ordinary firmness" from engaging in protected conduct. *See Thaddeus-X*, 175 F.3d at 394.

Here, the deprivations imposed on Burley – loss of medical treatment for one day and foot soak, bottom bunk, ground floor and heel pad accommodations – did not deprive him of a liberty interest because

the deprivations did not extend the duration of his sentence or impose an atypical, significant deprivation. Indeed, the record shows that he received treatment just a few days later.  (ECF No. 118, PageID.1265.) The Court thus finds that Abdellatif is entitled to summary judgment as to this claim.

### 4.    State Law Claims of Gross Negligence and IIED

Abdellatif argues that Burley's gross negligence and IIED claims should be dismissed because they sound in medical malpractice, which imposes certain statutory requirements upon plaintiffs that Burley has not met.  (ECF No. 120.)  A claim for medical malpractice in Michigan is "subject to the procedural and substantive requirements that govern" such actions.  *Bryant v. Oakpointe Villa Nursing Ctr.*, 471 Mich. 411, 422 (2004).   Under Michigan law, a medical malpractice action may not be commenced unless the defendant healthcare provider is first served with a notice of intent to file a claim at least 182 days before the action is commenced.  MCL § 600.2912b.  Further, the plaintiff must include with his complaint an affidavit of merit signed by a health professional, attesting to the defendant's failure to meet the standard of patient care.  MCL § 600.2912d.[7]

The Michigan Supreme Court has set forth a two-part test for determining whether the nature of a claim is medical malpractice.  *See Bryant*, 471 Mich. at 422.  First, did the alleged conduct occur "within the course of a professional relationship?" and, second, do the allegations "raise questions involving medical judgment?"  *Id*.

With respect to the first factor, the Michigan Supreme Court has defined a professional relationship

---

[7] The Court notes that there exists a split in the Eastern District of Michigan as to whether these requirements are "procedural" or "substantive."  *Compare, e.g.*, *Stojcevski v. Cty. of Macomb*, 143 F. Supp. 3d 675, 692-93 (E.D. Mich. 2015) with *Johnson v. Williams*, No. 15-13856, 2017 WL 4236548, at *15 (E.D. Mich. Sept. 25, 2017).  The significance is that "in federal diversity actions, state law governs substantive issues and federal law governs procedural issues.'"  *Stojcevski*, 143 F. Supp. 3d at 693 (quoting *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002).  Thus, if the "requirements" are merely "procedural," they do not apply to medical malpractice actions brought in federal court.  The parties do not address this issue, and the Court need not resolve it here because Burley's claims do not sound in medical malpractice.

as one in which "a licensed health care professional, licensed health care facility, or the agents or employees of a licensed health care facility, were subject to a contractual duty that required those professionals, that facility, or the agents or employees of that facility, to render professional health care services to the plaintiff." *Id.* There can be no doubt that the conduct at issue here occurred within the course of a professional relationship.  (ECF No.1.)

The real dispute here concerns the second *Bryant* factor.  In determining whether a plaintiff's allegations raise questions involving medical judgment, the Michigan Supreme Court has noted that, "[i]f the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence." *Bryant*, 471 Mich. at 423.  If, however, "the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved." *Id*.

Once again, Abdellatif's argument rests in large part on his version of the facts about the medical appointment in question.  (ECF No. 120, PageID.1306-07.)  However, taking the evidence in the light most favorable to Burley, the Court finds that his claims sound in negligence, not medical malpractice.  *If* the medical appointment transpired consistent with Burley's evidence, then the jury would not need the help of an expert witness to decide whether Abdellatif exercised any medical judgment whatsoever, let alone whether he exercised that judgment reasonably.  *See Jones v. Corr. Med. Servs., Inc.*, 845 F.Supp.2d at 846 ("On the other hand, a claim that defendant did nothing in response to a known risk is a matter of negligence, not malpractice.").  Thus, Abdellatif's argument, that Burley's state law claims should be dismissed because they sound in malpractice, fails.

Finally, Abdellatif argues that even examining Burley's IIED claim on the merits shows that he is entitled to summary judgment.  The Court agrees.  Under Michigan law, the elements of a claim for IIED

are (1) extreme or outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577 (2004). Even if the events occurred as Burley contends, and even if he could satisfy the first three elements, he failed to raise a material question of fact as to the fourth element.

Burley does not present any evidence that he suffered anything remotely approaching "severe emotional distress," and in fact, the evidence establishes the absence of any such distress. When questioned at his deposition about the incident in question, Burley testified that he was "bewildered, in shock" and "confused" at what had occurred, but that he was nevertheless able to walk down the hall and have a conversation with another inmate who had allegedly been present. (Burley dep., at 15.) Burley's medical records from the days and weeks following the appointment in question similarly demonstrate that Burley was not suffering from "severe emotional distress." Rather, although Burley complained about Abdellatif's treatment, he only sought care for his feet, and did not seek mental health treatment or make any statements indicative of him suffering severe emotional distress. (ECF No. 118, PageID.1264-1274.) And, just two weeks after the incident in question, Burley saw a nurse who noted that although he remained "upset" about Abdellatif's alleged conduct, he presented with "[n]o unusual anxiety or evidence of depression" and was "[a]lert and oriented x 3." (*Id.*, PageID.1269.) In light of this evidence, Abdellatif is entitled to summary judgment as to Burley's IIED claim.

**III.   CONCLUSION**

For the reasons discussed below, it is **RECOMMENDED** that Abdellatif's Motion for Summary Judgment **(ECF No. 117)** be **GRANTED** with regard to Burley's Eighth Amendment, Fourteenth Amendment, and IIED claims, but **DENIED** as to his First Amendment retaliation claim and his gross negligence claim.

Dated: January 16, 2020                 s/David R. Grand
Ann Arbor, Michigan                   DAVID R. GRAND
                                      United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 16, 2020.

                                     s/Eddrey O. Butts
                                     EDDREY O. BUTTS
                                     Case Manager