**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
Southern Division**

EDWARD BURLEY, #502426

                              Case No.: 2:16-cv-12256

    Plaintiff,              District Judge: Arthur J. Tarnow

v.                                 Magistrate Judge: David R. Grand

BADAWAI ABDELLATIF, et al.

    Defendants,

_____/

**PLAINTIFF BURLEY'S OBJECTIONS TO MAGISTRATE
JUDGE'S  REPORT AND RECOMMENDATION (ECF NO. 135)**

### I.    Procedural History

Plaintiff Edward Burley filed a complaint against Defendants, Dr. Bawadi Abdellatif ("Dr. Abdellatif"), Erin Parr-Mirza ("Parr-Mirza"), Heather Cooper ("Cooper"), Corizon Health, Inc. ("Corizon"), Kim Farris ("Farris") and Joanne Sheldon ("Sheldon")  on June 17, 2016 alleging violations of his First, Fifth, Eighth and Fourteenth Amendment rights. Since that time, the Honorable Arthur J. Tarnow has, in a series of rulings, dismissed claims against all defendants, except for Dr. Abdellatif. In the most recent Report and Recommendation (ECF No. 135), Magistrate Judge Grand **GRANTED** Defendant Abdellatif's Motion for Summary Judgment with regard to Burley's Eighth Amendment, Fourteenth Amendment and

1

IIED Claims, but **DENIED** it as to Burley's First Amendment retaliation and gross negligence claims.

## II.     Statement of Facts

On June 23, 2015 Plaintiff Burley alleges that at a chronic care visit, Dr. Abdellatif refused to treat him due to his religious beliefs. Burley alleges that when Dr. Abdellatif was informed that Plaintiff Burley was Jewish, Dr. Abdellatif stated that he could not treat Plaintiff Burley because he was "a Jew." (ECF No. 126-3, PageID.1380.) Further, Burley alleges that Dr. Abdellatif opened the door for him and gestured for him to leave. (ECF No. 1, PageID.23.) Dr. Abdellatif testified consistent with the medical record (ECF No. 117-2, PageID.1068), in that, he assessed Plaintiff and found normal dry clean feet and no swelling. Although Dr. Abdellatif noticed that Plaintiff was limping when he came in and complaining of severe pain when palpitating feet but stated that Plaintiff was "walking normal" when he left and stated to him that he played basketball and does strenuous workouts. (ECF No. 135, PageID.1454 (Citing ECF No. 118, PageID.1260.)). Plaintiff Burley disputes this interaction and insists that Dr. Abdellatif never performed any examination on his feet. Further Plaintiff Burley denies ever telling Dr. Abdellatif that he played sports and states that he did not engage in any strenuous workouts. (Burley Dep., at 22, 38.) Burley's cellmate, Leo Zuniga, provided an affidavit stating

2

that in all the time he spends with Burley, up to 23 hours a day, he has "never seen him do any type of exercises." (ECF No. 126-3, PageID.1379.)

After the June 23, 2015 incident, Burley received contradicting information for his foot treatments. On July 28, 2015, Dr. Abdellatif ordered an X-ray of Plaintiff Burley's feet and on July 30, 2015 another Dr. examined the X-ray finding that Plaintiff Burley had "normal feet." (ECF No. 135, PageID.1454 (Citing ECF No. 118, PageID.1282, 1285)). Two days later, based on Plaintiff Burley's constant complaints of pain, another nurse reinstated his accommodation for foot soaks. (*Id.*, PageID.1289-1291). On September 29, 2015 a nurse found in her objective opinion that Plaintiff Burley's feet were swollen (*Id.*, PageID.1293); regardless, two days later on October 1, 2015, Dr. Abdellatif cancelled Plaintiff's foot soak accommodations. (*Id.*, PageID.1296.)

Since this time, Burley has been transferred to Brooks Correctional Facility in Muskegon, then to Oaks Correctional Facility and is now confined at Ionia Correctional Facility. He has not received treatment for his feet at these facilities as his pain has resolved. (*See* attached Exhibit 1, Burley Dep. at 20-21).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) provides in pertinent part, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and

recommendations." Fed. R. Civ. P. 72(b). The Magistrate Judge Act requires district courts to review de novo those portions of the magistrate judge's report to which a timely objection is made. 28 § U.S.C. 636(b)(1)(C). The statute grants district courts the discretion to "accept, reject, or modify, in whole or in part" the findings or recommendations of the magistrate judge and to "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

### IV.   PLAINTIFF BURLEY'S SPECIFIC OBJECTIONS

#### Objection #1:

**Magistrate Judge Grand erred in finding that Defendant was not deliberately indifferent to Plaintiff Burley's medical needs amounting to cruel and unusual punishment in violation of the Eighth Amendment.**

Burley alleges that Abdellatif's cancellation of his accommodations for his foot soak constitutes deliberate indifference amounting to cruel and unusual punishment in violation of the Eighth Amendment. (ECF No. 1.) "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impost cruel and unusual punishment in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim of deliberate indifference under the Eighth Amendment requires an objective and subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires a sufficiently serious medical need. *Mattox v. Edelman*, 851 F.3d 583, 597 (6th Cir. 2017). A sufficiently serious

medical need would be one that a physician has diagnosed as requiring mandatory treatment, or one that a lay person would easily recognize as requiring a doctor's attention. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2005). The subjective component requires that the defendant acts with a sufficiently culpable state of mind; mere negligence, or even gross negligence does not suffice. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citing *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). Burley must allege facts that Defendant: 1) subjectively perceived the facts from which to infer a substantial risk to the Plaintiff, 2) actually drew the inference of the risk and 3) consciously disregarded the perceived risk. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001); *Farmer v. Brennan*, 511 U.S. at 825, 837 (1994).

In this case, the issue is whether Defendant was deliberately indifferent to Burley's serious medical needs as to his heel spurs that amounted to cruel and unusual punishment in violation of the Eighth Amendment. First, at the time of the visit when it was cancelled, Burley had a serious medical need that would be recognized by a lay person as requiring a doctor's attention. Although the serious medical need was not diagnosed by a physician, that is only because the attending physician, Dr. Abdellatif, was blinded by his opposition to treating Jewish inmates and refused to treat Plaintiff Burley due to his religious beliefs. A review of the medical records of Plaintiff shows that he has had an issue with painful heel spurs

5

for years (*see* attached Exhibit 2, portions of medical records as to heel spurs treatment).

Courts have recognized that a medical need that imposes substantial pain meets the first prong that Burley had a serious medical need. In *Horn v. Madison County Fiscal Court,* the Sixth Circuit found a violation of the Eighth Amendment only where prison officials are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." 22 F.3d 653, 660 (6th Cir.1994). In *Sims v. Piper*, the court found no deliberate indifference to the prisoner's claim that the doctor did not tell him that the x-rays did not show heel spurs. 07-14380, 2009 WL 393620, at *3 (E.D. Mich. Feb. 13, 2009), see attached Exhibit 6. The court found that even assuming that the doctor had told him the x-rays did not show bone spurs when such were present,

> the evidence shows that Defendant's recommended course of treatment would have been no different even if he had reviewed the x-ray results. *See supra.* Again, Defendant demonstrates that conservative treatment for Plaintiff's condition for one year, *and sometimes longer,* is within the realm of accepted medical practice.

*Id*.

In this case, Plaintiff alleged that the Defendant discontinued medical care for the heel spurs based solely on the fact that he was Jewish. Defendant offered no justification for discontinuing medical treatment of painful heel spurs that had previously been approved by other medical staff for the reason that Plaintiff was

6

Jewish. Plaintiff cannot find case law or reference in medical literature that treatment of a patient can be based on his religion.

The *Report* stated that without more, painful heel spurs are not a sufficiently serious medical need, citing to *Herrerra v. MDOC*, 10-cv-11215, 2011 WL 3862640 at 15 (E.D. Mich., July 22, 2011); but that is not entirely true. *Herrerra* stated that "the generalized allegations" of painful heel spurs are "insufficient to state a claim that Plaintiff suffered a serious medical need." *Id.* It left open the idea that specific allegations could be sufficient to state an Eighth Amendment claim. In this case, Plaintiff has more than just generalized allegations, he demonstrated that his pain was severe and MDOC recognized such by issuing special accommodations to provide care for such pain. (*See* Exhibit 3, Special Accommodation notice 8/25/2008 by Rosalie Lee, Kite response 5/14/2015 about foot pain/heel spurs; Healthcare request on 6/4/15; healthcare request on 6/22/15; Healthcare request on 7/7/15; healthcare request on 1/14/. complaining of foot pain).[1]

---

[1] Plaintiff Burley was constantly kiting about his painful spurs. In a report dated June 16, 2015, Burley **complains** that he "has spurs on the bottom of both feet and has to walk on his toes all the time cuz it hurts so bad". (*See* Exhibit 4, Burley EMR 2015, page 13). Further, the day before the incident with Dr. Abdellatif on June 22, 2015, Burley kited once more to healthcare for his sharp pains in his heels. (Exhibit 4, Burley EMR 2015 Page 25). And even after the incident, on June 30, 2015, Burley continues to kite about his painful heel spurs. (*Id*. EMR 2015 Page 34). Regardless of one single x-ray revealing that Burley has "normal feet" and no heel spurs, this is not to override the consistent kiting about the pain to Plaintiff Burley's feet.

Contrary to the R&R here, courts have recognized that heel spurs can cause substantial pain. In *Norris v. Moore,* the court discussed whether heel spurs were a serious medical condition [*see, e.g., id.* at 8 ("[H]eel pain commonly caused by heel spurs and/or plantar fasciitis can become a debilitating condition secondary to limiting normal weight bear status.")] and found that there was a lack of evidence to show the requisite mental state. CIV.A. 8:12-1162-MGL, 2013 WL 5332851, at *9 (D.S.C. Sept. 23, 2013), see attached Exhibit 6. In this matter the issue of the requisite mental state creates a genuine issue of material fact, in that, Plaintiff is claiming the Defendant refused to treat him because of his religious beliefs and the Defendant claims that he treated Plaintiff by discontinuing his special accommodations.

The court in *Jurgevich v. McGary* recognized that a claim of deliberate indifference could exist from allegations that the heel spurs caused continuous pain and discomfort and failure to treat. 63 Fed.Appx. 448, 450 (10th Cir. 2003). The district court dismissed the lawsuit for failure of the prisoner to show the personal involvement of the defendants. In this matter, Defendant has not alleged that he had no personal involvement in the discontinuation of the special accommodations related to heel spurs treatment.

The R&R referenced that Plaintiff was able to walk out of Defendant's office (ECF No. 135, PageID.1457 (citing Burley dep. at 15)), is not dispositive that Burley

8

could walk without serious and severe pain to his feet. In fact, Burley complained that he "has spurs on the bottom of both feet and has to walk on his toes all the time cuz it hurts so bad". (*See* 4, Burley EMR 2015, page 13). Further, in the deposition, Defendant's counsel failed to ask a follow-up question whether he had difficulties walking when being ushered out of the office of the Defendant and down the hallway. It is the responsibility of the Defendant to establish that there is a lack of a genuine issue of material facts. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Defendant has failed to establish that there is no genuine issue of material facts.

## Objection #2:

**Magistrate Judge Grand erred in failing to consider Plaintiff Burley's other serious medical conditions, such as stomach and respiratory ailments.**

Magistrate Judge Grand failed to consider that Plaintiff Burley was not only suffering from severely painful heel spurs, but also stomach and respiratory ailments.

In Plaintiff Burley's statement of claims in the original complaint, he states that Dr. Abdellatif "cancelled needed accommodations for his chronic asthma and other respiratory complications" (ECF No. 1, PageID.3). Plaintiff Burley states that Dr. Abdellatif refused to treat him for "chronic care, foot pains and acid reflux

problems" on June 23, 2015. Furthermore, Burley provides a sworn affidavit from his cellmate, Leo Zuniga #387006, that he had personal knowledge of the pain Plaintiff was in due to having been awoken by Plaintiff Burley "at all times of the night with complaints of pains in his feet and stomach." (ECF No. 1, PageID.24.)

Furthermore, Plaintiff Burley kites multiple times before and after his visit with Defendant complaining of these ailments. In multiple separate kites, Burley explains that he has blood in his stool and severe stomach cramps after ingesting food. (Exhibit 5 , dated 7/1/15, 7/5/15, 7/14/15, and 8/16/150.) Burley states that he told Defendant of these ailments during his June 23, 2015 visit. Burley continually kites to healthcare about his severe diarrhea, blood in his stool, and stomach pains until November 6, 2016, approximately a year and a half after the incident with the Defendant.

Therefore, Plaintiff Burley requests that this Court reject the restricted finding in the Report and Recommendation and give due credit to <u>ALL</u> of Plaintiff's ailments, not just the heel spurs.

### **Objection #3:**

### **The Report and Recommendation erred in rejecting Plaintiff Burley's claim premised on the Equal Protection of the Fourteenth Amendment claim.**

Plaintiff objects to the recommendation in the Report and Recommendation that this Court dismiss his claim premised on the Equal Protection Clause of the Fourteenth Amendment. The Fourteenth Amendment provides that "[n]o State shall

. . . deprive any person life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1. The Magistrate Judge improperly characterized Plaintiff's Fourteenth Amendment claim as arising under the Due Process Clause, rather than the Equal Protection Clause (ECF No. 135, PageID.1463).

The Report and Recommendation contrasted constitutional retaliation claims under the First Amendment and Due Process Clause, the latter of which requires that Plaintiff show the deprivation of a liberty interest. (*Id*.). The Magistrate Judge's citation of *Sandin v. Conner*, 515 U.S. 472 (1995), reveals this error (ECF No. 135, PageID.1463). In contrast to the Due Process Clause, the Equal Protection Clause does not require any "liberty" interest but seeks to eliminate "invidious racial discrimination." *Washington v. Davis*, 426 U.S. 229, 242 (1976). The Report and Recommendation overlooks this fundamental evil of the Equal Protection Clause. "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id*. at 242.[2] Usually, proving such discrimination is a relatively difficult task.

---

[2] While sometimes characterized as both a race and a religion, "Jewish" is a protected class as a "discrete and insular" minority group. *United States v. Carolene Products Company*, 304 U.S. 144, 153 n.4 (1938); *Oyler v. Boles*, 368 U.S. 448, 456 (1962) (noting Equal Protection forbids classifications based on "race, *religion*, or other arbitrary classification") (emphasis added); *Shivley v. Green Local Schools*, 579 F. App'x 310, 356-58 (6th Cir. 2014) (finding Equal Protection violation for deliberate indifference to harassment based on gender and religion).

11

The Supreme Court divided Equal Protection claims into several analytically distinct ways to prove a government official's discriminatory application of the law. First, an Equal Protection plaintiff may prove discriminatory purpose through a *de jure* discrimination theory, showing the disparate impact of a facially neutral law. *Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886) (holding Equal Protection violation where only Chinese laundries were shut down with facially neutral laws). Second, an Equal Protection plaintiff may prove discriminatory purpose where a State "impermissibly interferes with the exercise of a 'fundamental' right" based on suspect classifications. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973) (rejecting Equal Protection argument that school districting improperly discriminated based on wealth); *Fowler v. Benson*, 924 F.3d 247, 261 & n.8 (6th Cir. 2019) (rejecting Equal Protection argument based on right to travel and wealth classification).

Third, and most relevant here, "[i]n limited situations, a plaintiff does not need to identify a specific group of persons who were treated differently. For instance, if government conduct was premised on a protected classification such as race or gender, a showing of discriminatory purpose may suffice." *In re Flint Water Cases*, 384 F. Supp. 3d 802, 845 (E.D. Mich. 2019) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-68 (1977), for the proposition that "a single act, if motivated by a desire to treat persons differently on the basis of race,

can result in a violation of the Equal Protection Clause"); *Davis v. Prison Health Services*, 679 F.3d 433, 438-39 (6th Cir. 2012) (upholding Equal Protection claim under rational basis review because "officers' actions . . . were motivated by an anti-gay animus"); *Lucas v. Chalk*, 785 Fed.Appx 288, 291 (6th Cir. 2019) (allowing amendment to add Equal Protection claim alleging that a prison doctor refused to treat the plaintiff because of his sexual orientation). This theory, sometimes referred to as a "class of one" theory, demands either negating "every conceivable reason for the government's actions or by demonstrating that the actions were motivated by animus or ill-will." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 463 (6th Cir. 2012). "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington*, 429 U.S. at 266.

Here, direct evidence raises a genuine issue of material fact regarding Defendant's discriminatory purpose. This is a rare case where the Defendant revealed his discriminatory intent, telling Plaintiff he "could not see you, you Jew" before dismissing Plaintiff from the room (ECF No. 135, PageID.1452.). Defendant's statement is direct evidence of discriminatory intent. While this sort of evidence is rare, Defendant's statement alone may support an Equal Protection violation. *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (Breyer, J., concurring in the result) (approving of factor based on a "vindictive action,"

illegitimate animus," or "ill-will"); *Davis*, 679 F.3d at 439; *Lucas*, 785 FedAppx at 291.

Defendant expressly refused to treat Plaintiff medically because of his Jewish race/religion.[3] A jury might infer that a motivating factor behind Defendant's decision to dismiss Plaintiff without treating him was impermissible discrimination. Therefore, Plaintiff requests that this Court sustain this objection and reinstate his claim premised on the Equal Protection Clause of the Fourteenth Amendment.

## IV.     Conclusion

Accordingly, Plaintiff Burley respectfully objects to the Magistrate Judge's Report and Recommendation (ECF No. 135) and requests that the Court overrule the Report and Recommendation, deny Defendant's Motion for Summary Judgement on the Eighth Amendment violation and the Equal Protection Clause, and allow this matter to proceed to trial.

---

[3] Defendant's express discriminatory "Jewish" classifications might soon give rise to a new kind of Free Exercise claim. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2024 n.3 (noting the Free Exercise Clause forbids "express discrimination based on religious identity"); Oral Argument Transcript, *Espinoza v. Montana Dep't of Rev.*, available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2019/18-1195_g314.pdf, p. 48 (Alito, J., remarking "If [the state court] did what it did for an unconstitutionally discriminatory reason, then there's a problem under *Village of Arlington Heights*"); *but see* Susan Gellman, Susan Looper-Friedman, *Thou Shalt Use the Equal Protection Clause for Religion Cases (Not Just the Establishment Clause)*, 10 U. PA. J. CONST. L. 665, 735 (2008) (citing *McDaniel v. Paty*, 435 U.S. 618, 643 (1978) (White, J., concurring in the judgment).

Respectfully Submitted,

/s/ Daniel E. Manville
Daniel Manville (P39731)
 Counsel for Plaintiff
Director, Civil Rights Clinic
MI. State University College of Law
PO Box 1570
East Lansing, Michigan 48826
(517) 432-6866
daniel.manville@law.msu.edu

## CERTIFICATE OF SERVICE

I hereby certify that February 12, 2020  I caused a copy of the above document was served by ECF on Defendants' counsel.

/s/ Daniel E. Manville
Daniel Manville (P39731)