UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD BURLEY,

    Plaintiff,

v.

BADAWI ABDELLATIF, ET AL.,

    Defendants.

Case No. 16-12256

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID R. GRAND

_____/

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [135]; SUSTAINING PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION [138]; OVERRULING DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION [139]; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [117]**

On June 17, 2016, Plaintiff Edward Burley filed this prisoner civil rights action against Defendants Dr. Badawi Abdellatif, Erin Parr-Mirza, Heather Cooper, Corizon Health, Kim Farris, and Joanne Sheldon alleging, *inter alia*, First, Fifth, Eighth and Fourteenth Amendment violations. On August 15, 2017 and March 19, 2018, the Court issued orders dismissing all defendants except Defendant Dr. Abdellatif. (*See* Dkt. #60 & 78). On June 14, 2019, Defendant Dr. Abdellatif filed a Motion for Summary Judgment [117] on the following remaining claims: First Amendment retaliation, Eighth Amendment deliberate indifference, Fourteenth

Amendment equal protection, gross negligence and intentional infliction of emotional distress. On July 22, 2019, Plaintiff filed a Response [126]. On August 5, 2019, Defendant filed a Reply [133]. On January 16, 2020, the Magistrate Judge issued a Report and Recommendation ("R&R") [135] recommending that the Court grant in part and deny in part Defendant's motion. Plaintiff filed Objections [138] to the R&R on February 12, 2020. Defendant filed Objections [139] to the R&R on February 13, 2020 and a Response [140] to Plaintiff's objections on February 26, 2020.

For the reasons stated below, the R&R [135] is **ADOPTED in part**; Plaintiff's Objections [138] are **SUSTAINED**; Defendant's Objections [139] are **OVERRULED**; and Defendant's Motion for Summary Judgment [117] is **GRANTED IN PART and DENIED IN PART**.

### FACTUAL AND PROCEDURAL BACKGROUND

The Court adopts the facts of this case as set forth in the R&R:

> At all times relevant to this action, Burley was an inmate at the Macomb Correctional Facility ("MRF"), a prison operated by the Michigan Department of Corrections ("MDOC"). Burley's claims center around a June 23, 2015 chronic care visit he had scheduled with Dr. Abdellatif regarding issues Burley was having with his feet and stomach.[1] (ECF No. 118, PageID.1256-57.) Burley alleges that Dr. Abdellatif took his vitals, but then, after Burley mentioned that he "was on the Vegan line

---

[1] At his deposition (ECF No. 117-3 ("Burley dep.")), Burley testified that at the beginning of the appointment he attempted to explain to Abdellatif that he was also having difficulties with his breathing. (Burley dep. at 14.) However, the medical records leading up to the visit with Abdellatif make no mention of this issue. (ECF No. 118, PageID.1256-57.) And, when Burley filed a grievance against Abdellatif about the issues giving rise to this civil action, Burley wrote, "I grieve Dr. Abdellatif for denying medical treatment for my heel spurs and acid reflux," again making no mention of a breathing issue. (ECF No.1, PageID.12.)

and was Jewish," Abdellatif abruptly terminated the appointment, and canceled "accommodations for foot soaks, bottom bunk, [] ground floor, and heel pads" that had been previously ordered for Burley. (ECF No. 117, PageID.1032.) More specifically, Burley testified:

> When I told the doctor this he became very irate. Very condescending stating -- I was sitting on the table -- that I could not see you, I could not see you, you Jew, and he asked me to leave. Then he proceeded to open the door.
>
> I recall him opening the door and he was holding his hand out for me to depart, making gestures for me to get out of the office. I was very bewildered, in shock.

(Burley dep. at 14-15.).

While it seems quite unthinkable that a prison doctor would refuse to treat a prisoner because the prisoner mentioned that he practiced a particular religion, Burley provided an affidavit and declaration of two fellow inmates, Paul Ayotte and Richard Crowell[2], who confirm Burley's version of events. Ayotte avers that he was present in medical at the time in question, and that he "personally observed Dr. Abdellatif tell prisoner Burley that he could not treat him because 'you are a Jew.'" (ECF No. 126-3, PageID.1380.) Ayotte also noted that Corrections Officer Tregumbo was present at the time and "appeared to be startled by Dr. Abdellatif's statement." (*Id*.) Crowell avers that he "personally [saw] Dr. Abdellatif usher [Burley], using sweeping motions, out of his office on June 23, 2015, stating 'I am not able to see you because you are a Jew.' I directly observed this on 6/23/15 while up at medical getting my medications." (ECF No. 1, PageID.23.)[3]

---

[2] In his response brief, Burley references Crowell's deposition testimony, but the exhibit Burley cited to was a transcript of Ayotte's deposition. (ECF No. 126, PageID.1357.) At any rate, Abdellatif does not argue that Crowell testified contrary to the averments in his affidavit.

[3] While Abdellatif characterizes Ayotte's and Crowell's averments as "unreliable" (ECF No. 133, PageID.1444), it is not clear why that is so. Abdellatif did not show that Ayotte and Crowell were not at medical during the time in question, and he did not submit an affidavit or deposition testimony from Officer Tregumbo. At any rate, the Court may not make credibility determinations in ruling on a summary judgment motion. Schreiber v. Moe, 596 F.3d 323,

The medical records include one from the date in question in which Dr. Abdellatif wrote:

> Comments: Normal dry clean feet, no edema or swelling any where, he came in limping badly but when exam done and asked to buy OTC meds he walked out fine, he claimed sever unbearable tenderness at heel when I was palpating them.
>
> **Assessment/Plan**
> Spur, calcaneal (726.73)
> Plan comments: Stated long Hx of heel pain increased in last year, note that he injured his hand few months ago playing BB, note that he came in to my office limping badly and when examination done and asked to buy OTC meds he left walking fine and left saying you not a real doctor and you have hundred [sic] of law suits against you, Patient said the salking [sic] tubs ordered by the PA didnt [sic] at all, will DC, his hearing was fine too today occasionally I had to repeat my words but mostly he heared [sic] me in my regularl [sic] low voice very well. [sic] As for BB will DC details and [accommodations] for that , he does 1000 pushups a day same for situps, he plays BB , no need for these [accommodations]

(ECF No. 118, PageID.1260.) Abdellatif testified consistent with the medical record. (ECF No. 117-2, PageID.1068.)

Burley disputes Abdellatif's version of the events, and insists that Abdellatif did not perform any examination whatsoever of his feet. (*E.g.*, Burley dep. at 19-20; ECF No. 1, PageID.17.) Burley also claims

---

333 (6th Cir. 2010). Obviously, this principle applies equally with respect to Burley's attempt to impugn Abdellatif's credibility at this stage of the proceedings by referencing a July 2017 "Stop Order" issued against him by the MDOC, although the circumstances giving rise to that Stop Order are clearly relevant to Abdellatif's credibility. (Sealed ECF No. 121, PageID.1326; Sealed ECF No. 121-4.)

he never told Abdellatif that he played basketball or did sit ups, and that in fact, he did not engage in those activities at all. (Burley dep., at 22, 38.) He presents the affidavit of his cellmate, Leo Zuniga, who avers that he and Burley spend approximately 23 hours a day together and that "[a]t no time [has he] ever seen Mr. Burley do any type of exercises whatsoever." (ECF No. 126-3, PageID.1379.)

Thereafter, Burley continued to receive some treatment for his feet. (ECF No. 118, PageID.1264-1274, 1279-1285.) This included Abdellatif ordering an x-ray of Burley's feet on July 28, 2015. (*Id.*, PageID.1282.) On July 30, 2015, the x-rays were reviewed by a different doctor who found Burley to have "normal feet." (*Id.*, PageID.1285.) Just two days later, though, apparently based only on complaints by Burley, a nurse reinstated his accommodation for twice daily "foot soaks." (*Id.*, PageId.1289-91.) At a September 29, 2015 appointment, the nurse's "objective" findings included that Burley's feet were swollen. (*Id.*, PageID.1293.) However, just two days later, on October 1, 2015, Abdellatif examined Burley's feet, found they were not swollen, and again canceled the foot soak accommodation. (*Id.*, PageID.1296.)

A number of months later, Burley transferred to a different prison, and he has not been receiving any treatment for his feet at that facility as his pain has essentially resolved. (Burley dep. at 20-21.)

## STANDARD OF REVIEW

The Court's review of objections to a Magistrate Judge's R&R on a dispositive motion is *de novo*. 28 U.S.C. § 636(b)(1)(c). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed in error' are too general." *Novak v. Prison Health Services, Inc.*, No. 13-11065, 2014 WL 988942, at *3 (E.D. MICH. Mar. 13, 2014) (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Ordinarily, objections that lack specificity do not receive *de novo* review. *Mira v. Marshall*, 806 F.2d 636, 637 (6th

Cir. 1986). In addition, the Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. FED. R. CIV. P. 72(b)(3).

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the Court views all of the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255.

## ANALYSIS

### I. Plaintiff's Objections [138]

**Objection 1:** The Magistrate Judge "erred in finding that Defendant was not deliberately indifferent to Plaintiff Burley's medical needs amounting to cruel and unusual punishment in violation of the Eighth Amendment." (Dkt. 138, pg. 4).

**Objection 2:** The Magistrate Judge "erred in failing to consider Plaintiff Burley's other serious medical conditions, such as stomach and respiratory ailments." (Dkt. 138, pg. 9).

Because Objection 1 and 2 both pertain to the R&R's analysis of Plaintiff's deliberate indifference claim, the Court analyzes them together, starting with

Objection 2. In Objection 2, Plaintiff argues that R&R did not consider his ailments other than heel spurs. Finding that the R&R only addresses Plaintiff's heel spurs and concludes that Plaintiff's deliberate indifference claim fails because of his heel spurs do not constitute a serious medical need (*See* Dkt, 135, pg. 7-8), the Court sustains this objection and conducts a *de novo* deliberate indifference analysis which includes Plaintiff's complaints of stomach pain, hearing loss, breathing problems and heel spurs.

Proving deliberate indifference under the Eighth Amendment requires a two-prong inquiry: objective and subjective. *Henry v. Michigan Dep't of Corr.*, 27 F. App'x 573, 575–76 (6th Cir. 2001). The objective component requires evidence of a sufficiently serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). For the medical need to be sufficiently serious, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Additionally, a serious medical need can be shown "where a plaintiff's claims arise from an injury 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention'." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 899–900 (6th Cir. 2004) (citation omitted).

The subjective component requires evidence that a plaintiff's medical provider acted with a sufficiently culpable state of mind to inflict "unnecessary and wanton" pain. *Durham v. Nu'Man,* 97 F.3d 862, 869 (6th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This infliction need not be purposeful; reckless disregard of a known risk of serious harm will suffice. *Farmer,* 511 U.S. at 835; *Wright v. Taylor,* 79 Fed. Appx. 829, 831 (6th Cir. 2003). However, "mere negligence, or even gross negligence, will not suffice." *Wright*, 79 Fed. Appx. at 831. Plaintiff claims that Defendant was deliberately indifferent to his hearing loss, stomach problems, breathing problems and heel spurs. (Dkt. 138, pg. 4-10). The Court will address each of Plaintiff's conditions in turn.

   a. <u>Hearing Loss</u>

Plaintiff claims that he suffers from chronic hearing loss and has a special accommodation for a hearing aid. (Compl. pg. 25-26; Dkt. 118, pg. 32). Defendant noted that although he "had to repeat [his] words" to Plaintiff during their meeting, "mostly [Plaintiff] heared [sic] [Defendant] fine with [his] regularl [sic] low voice very well." (Dkt. 118, pg. 33). Plaintiff argues that although he did not specifically ask Defendant for treatment regarding his hearing, Defendant's notation about his ability to hear and communicate prevented and/or delayed him from being able to access the care he requested in the future, such as a replacement or repaired hearing aid and an appointment with an audiologist. (Dkt. 117-3, pg. 25). Although severe

hearing loss may be a serious medical need, Plaintiff has failed to show that Defendant was subjectively aware of this need. *See Cooper v. Johnson,* 255 Fed. Appx. 891, 892 (5th Cir. 2007); *Wheeler v. Butler,* 209 Fed. Appx. 14, 15 (2d Cir. 2006); *Large v. Wash. Cnty. Det. Ctr.,* 915 F.2d 1564 (4th Cir. 1990); *Gilmore v. Hodges*, 738 F.3d 266, 275–76 (11th Cir. 2013) (all finding severe hearing loss to be a serious medical need under the Eighth Amendment).

Neither Plaintiff nor Defendant state that Plaintiff went to see Defendant for the purpose of receiving treatment for his hearing. However, Plaintiff claims that he told Defendant that he was hearing impaired and asked him to speak louder or approach him so he could read Defendant's lips. (Dkt. 117-3, pg. 15). Plaintiff was then able to communicate either by hearing or reading Defendant's lips. Either way, from Defendant's subjective point of view, Plaintiff was able to communicate with him without too many problems. Furthermore, there was no evidence that reflecting these observations in Plaintiff's medical records, would potentially place Plaintiff in substantial risk of harm at the hands of a different medical provider at some point in the future. There is also no evidence that Defendant himself failed to respond to Plaintiff's hearing need, in fact, Plaintiff claims that different providers failed to respond—not Defendant. (Dkt. 117-3, pg. 23-25). Additionally, there is no evidence that Defendant intentionally denied, delayed or had any involvement in the medical care that Plaintiff later requested. Moreover, there is no evidence that Defendant

intentional interfered with Plaintiff's prescribed treatment—his hearing aid—either on June 23, 2015 or at a later date. Therefore, Defendant's actions regarding Plaintiff's hearing loss do not constitute unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Plaintiff's complaints of stomach pain, breathing problems, and heel spurs, however, do constitute deliberate indifference.

    b. <u>Stomach Pain, Breathing Problems, and Heel Spurs</u>

Plaintiff claims that he suffers from stomach problems relating to Gastroesophageal reflux disease ("GERD") and acid reflux. (Compl. pg 22; Dkt. 117-3, pg. 9-10). His cell mate, Leo M. Zuniga, claims he has heard Plaintiff wake up at night and complain about his stomach pain. (Compl. pg. 24). On June 22, 2015, Plaintiff sent a kite seeking medical care for his "bowels." (Dkt. 118, pg. 30). On June 23, 2015, Plaintiff met with Defendant for what he believed to be a chronic care visit. (Dkt. 117-3 pg. 19). Plaintiff claims that during the visit he tried to tell Defendant that he was having stomach pain but Defendant refused to treat him when he discovered that Plaintiff was Jewish. (*Id.* at 15).

Under the objective prong, Plaintiff's stomach problems constitute a "serious medical need." *See, e.g., Bell v. Jendell*, 980 F. Supp. 2d 555, 560 (S.D.N.Y. 2013) (finding that plaintiff's acid-reflux symptoms which included " 'vommitting [sic] acid' while sleeping" are extreme and/or serious); *Lane v. Corizon Healthcare,* No. 13–CV–519, 2013 WL 5348489, at *2 (N.D. Ind. Sept. 23, 2013) (finding that

plaintiff with acid reflux "ha[d] alleged a serious medical need"); *Dobbey v. Randle,* No. 10–CV–3965, 2012 WL 3544769, at *2–3 (N.D. Ill. Aug. 16, 2012) (finding that plaintiff with GERD symptoms, such as abdominal pain and blood in his stool, "[met] the objective standard, at least at the pleading stage"); *See generally Brock v. Wright,* 315 F.3d 158, 163 (2d Cir. 2003) ("We do not . . . require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one.").

Plaintiff claims that, on the day he visited Defendant, he was having problems with his asthma. (Dkt. 117-3, pg. 19). Breathing problems, such as the chronic asthma that Plaintiff complains of, also constitute a serious medical need. See *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (finding that "asthma satisfies the 'objective' requirement of [a] deliberate indifference claim."); *Adams v. Poag,* 61 F.3d 1537, 1539–41, 1543 (11th Cir. 1995) (asthma, with continual breathing problems, can constitute a serious medical need); *Rogers v. Ryan*, No. CV 16-12735, 2019 WL 4145980, at *11 (E.D. MICH. July 31, 2019), *report and recommendation adopted*, No. CV 16-12735, 2019 WL 4139302 (E.D. MICH. Aug. 30, 2019) (finding a serious medical need when plaintiff complained, *inter alia*, of having trouble breathing). Refusing to treat a breathing problem does not just prove a denial of "the

minimal civilized measure of life's necessities," it deprives a human of life's very necessity. *Rhodes*, 452 U.S. at 347.

Like many ailments, heel spurs range in severity, but looking at the evidence in the light most favorable to the non-moving party, Plaintiff's heel spurs also constituted a serious medical need. Plaintiff claimed that he experienced "very, very painful, very excruciating pain" that forced him to even walk on his toes at times. (Dkt. 117-3, pg. 19; 118, pg. 28). Further, on June 22, 2015, Plaintiff sent a kite complaining of the "sharp pain in [his] feet." (Dkt. 118, pg. 30). These complaints are "not a mere discomfort or inconvenience" as the R&R states. (R&R at 8).

Additionally, Plaintiff's pain was also evident to people around him. *See Blackmore*, 390 F.3d at 899–900 ("where a plaintiff's claims arise from an injury 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,' . . . it is sufficient to show that he actually experienced the need for medical treatment.") (citation omitted). Plaintiff's cell mate, Zuniga, claimed he heard Plaintiff wake up at night and complain about the pain in his feet. (Compl. pg. 24). Another inmate, Richard Crowell, noted that although Plaintiff does not attend the yard on a daily basis, because of the pain in his feet, when he did attend, he was unable to walk an entire lap, which is about a quarter of a mile. (*Id*. at 23).

Defendant's refusal to treat Plaintiff's serious medical needs also constitute deliberate indifference because he consciously disregarded Plaintiff's complaints

and refused to treat him. The record, looked at in the light most favorable to Plaintiff, shows that Defendant was aware of Plaintiff's ailments. Plaintiff states that he tried to tell Defendant that he was having problems breathing, had foot pains and stomach pains. (Dkt. 117-3, pg. 15). Additionally, Defendant noted the following about Plaintiff's heel spurs in his medical records: "Severity level is Severe (10). The problem is worsening . . . The pain is aching. Context: there was no injury. Additional information: Stated bilateral heel pains for years worse in last year or so rated at almost 10, nothing helps according to him, stated doesnt go to chow due to pain and losing Wt from that." (Dkt. 118, pg. 32). However, despite these observations, Defendant not only to refused to treat Plaintiff's needs, he intentionally cancelled on-going treatment. Under *Estelle*, such an intentional interference with prescribed treatment constitutes "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104–05; *see also Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013).

It is important to note that the Court does not opine on whether or not Plaintiff's medical needs were serious or whether or not Defendant's response to them was deliberately indifferent; it only holds that where there is evidence that Plaintiff complained of having serious stomach pain, breathing problems and excruciating 10 out of 10 pain in his feet that made it difficult for him to walk and the attending physician literally ushered him out of the door—a reasonable jury may

conclude that this rises to the level of deliberate indifference under the Eighth Amendment. The Court therefore finds that the Magistrate Judge erred both in concluding that no reasonable jury could find deliberate indifference and in failing to incorporate all of Plaintiff's ailments in his analysis. Objections 1 and 2 are sustained.

**Objection 3:** "The Report and Recommendation erred in rejecting Plaintiff Burley's claim premised on the Equal Protection of the Fourteenth Amendment claim." (Dkt. 138, pg. 10).

Plaintiff argues that the R&R erred in dismissing his Fourteenth Amendment equal protection claim. The Court agrees. The R&R incorrectly analyzed Plaintiff's claim under due process rather than equal protection. (R&R at 13-14). Under equal protection analysis, Plaintiff's claim survives summary judgment.

Courts strictly scrutinize allegations of discrimination against discrete and insular minorities, such as those of the Jewish faith. *See United States v. Carolene Prod. Co.*, 304 U.S. 144, 152 n.4 (1938). "Conduct subject to strict scrutiny is presumptively invalid; only official action that is narrowly tailored to meet a compelling state interest will survive." *In re Flint Water Cases*, 384 F. Supp. 3d 802, 846 (E.D. MICH. 2019). If narrow tailoring to a compelling state interest in the challenged conduct can be shown, the conduct passes strict scrutiny. *Grutter v. Bollinger*, 539 U.S. 306, 327 (2003). However, "[w]hen there is…proof that a

discriminatory purpose has been a motivating factor in the decision, this judicial deference is no longer justified." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977). The touchstones of invidious racial discrimination are disproportionate impact and discriminatory intent. *Id.* at 265 Additionally, "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266.

Here, Plaintiff presents direct evidence of Defendant's alleged discrimination:

> He commented that my -- something about my skin and that's when I proceeded to tell the doctor that it was probably in my diet because I was on a vegan diet and that I was practicing Judaism. When I told the doctor this he became very irate. Very condescending stating -- I was sitting on the table -- that I could not see you, I could not see you, you Jew, and he asked me to leave. Then he proceeded to open the door.

(Dkt. 117-3 pg. 15). Two witnesses also corroborate Plaintiff's allegations. (*See* Compl. pg. 23; *see also* Dkt. 117-4 pg. 15). When crediting Plaintiff's evidence, no guess work is necessary to determine if a "invidious discriminatory purpose was a motivating factor." *Vill. of Arlington Heights*, 429 U.S. at 266. By showing the discriminatory intent required to show a violation of the Equal Protection Clause, Plaintiff has met his burden of showing a genuine dispute of fact. Objection 3 is sustained.

I. **DEFENDANT'S OBJECTIONS [139]**

**Objection 1:** "The Magistrate erred in concluding a material question of fact exists regarding whether Dr. Abdellatif would have taken the same action absent Plaintiff's protected conduct on June 23, 2015." (Dkt. 139, pg. 4).

Defendant argues that he would have taken the same action absent Plaintiff's protected conduct under the First Amendment and that the Magistrate Judge erred in concluding otherwise. However, the R&R, correctly did not credit Defendant's version of events and instead credited Plaintiff's as the non-moving party. (*See* R&R at 12-13). Plaintiff claims that when he mentioned being Jewish, Defendant became irate and asked him to leave. (Dkt. 117-3, pg. 15). Further, several witnesses corroborate Plaintiff's claims: Crowell claims that he observed Defendant usher Plaintiff out of his office (Compl. pg. 23) and say "I am not able to see you because you are a jew;" Ayotte also claims to have heard Defendant say "I can't treat you. You're Jewish. I'm a Syrian. You're Jewish. You must leave. I'm ordering you to leave." (Dkt. 117-4, pg. 15).

Plaintiff's version shows that Defendant took adverse action against him *because* of Plaintiff's faith, not *in spite* of it. Therefore, just as the Court has done for all of Plaintiff's claims, it credits Plaintiff's version of events, not Defendant's and finds that there is a material question of fact as to whether Defendant would have refused to treat Plaintiff and cancel his treatments if Plaintiff did not mention he was Jewish. Objection 1 is overruled.

**Objection 2:** "The Magistrate erred in not dismissing Plaintiff's Gross negligence claims." (Dkt. 139, pg. 6).

Under Michigan law, medical malpractice requires a showing that Defendant's actions fell below the standard of care, while gross negligence does not. *See Bryant v. Oakpointe Villa Nursing Ctr.*, 471 MICH. 411, 422 (2004). The R&R concluded that Plaintiff's claims sound in negligence rather than medical malpractice because "[i]f the medical appointment transpired consistent with Burley's evidence, then the jury would not need the help of an expert witness to decide whether Abdellatif exercised any medical judgment whatsoever, let alone whether he exercised that judgment reasonably. *See Jones v. Corr. Med. Servs.*, Inc., 845 F. Supp. 2d at 846 (' . . . a claim that defendant did nothing in response to a known risk is a matter of negligence, not malpractice.')." (R&R at 15). Defendant argues that this conclusion was erroneous because the Magistrate Judge found that Defendant was not deliberately indifferent and therefore exercised medical judgment in deciding not to treat Plaintiff. (Dkt. 139, pg. 6-7). However, in light of the Court's decision not to adopt the R&R's conclusion's regarding deliberate indifference, this logical inconsistency no longer exists.

Gross negligence "is defined as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'" *Tarlea v. Crabtree*, 263 Mich. App. 80, 90 (2004) (quoting *Maiden v. Rozwood*, 461 MICH. 109, 123 (1999)).

Since deliberate indifference inherently encompasses gross negligence, the Court finds that there is a material question of fact as to whether Defendant acted reasonably in refusing to treat Defendant. Objection 2 is overruled.

## CONCLUSION

For the reasons stated above, the Court **ADOPTS IN PART the R&R** [135]; **SUSTAINS** Plaintiff's Objections [138]; **OVERRULES** Defendant's Objections [139]; and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment [117].

This ruling has the effect of dismissing Plaintiff's intentional infliction of emotional distress claim. Remaining in this action are the following claims: gross negligence, Eighth Amendment deliberate indifference, First Amendment retaliation, and Fourteenth Amendment equal protection.

Accordingly,

**IT IS ORDERED** that the R&R [135] is **ADOPTED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's Objections [138] are **SUSTAINED**.

**IT IS FURTHER ORDERED** that Defendant's Objections [139] are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [117] is **GRANTED IN PART AND DENIED IN PART.**

**SO ORDERED**.

                                            s/Arthur J. Tarnow
                                            Arthur J. Tarnow
Dated: March 26, 2020                 Senior United States District Judge